400 So.2d 804 (1981)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Etc., Appellant,
v.
Lewis H. KAMINESTER, M.D., P.A., a Florida Corporation, Appellee.
No. 80-1382.
District Court of Appeal of Florida, Third District.
June 30, 1981.
*805 Walton, Lantaff, Schroeder & Carson and George W. Chesrow, Miami, for appellant.
Robinson & Greenberg and Daniel K. Bandklayder and Barry N. Greenberg, Miami, for appellee.
Before BARKDULL, SCHWARTZ and FERGUSON, JJ.
FERGUSON, Judge.
Southern Bell Telephone and Telegraph Company appeals from a jury determination of damages finding it liable to appellee, Lewis H. Kaminester, M.D., P.A., a Florida corporation, in the amount of $92,929.00 for a breach of contract in incorrectly listing the doctor's address in the 1977 Greater West Palm Beach Yellow Pages and in the 1977 Hobe Sound-Jupiter Yellow Pages.[1] We reverse.
Appellee, Lewis H. Kaminester, M.D., P.A., is a Florida corporation licensed to practice medicine in Florida. Dr. Kaminester, a dermatologist, is the principle employee and sole officer of the corporation. At the trial on damages, the appellee-corporation relied on the testimony of Dr. Kaminester and the corporation's accountant to establish loss of net profits. This testimony was based on information contained in patient interview sheets which each new patient was asked to fill out during his first office visit. The first sheet includes the question as to who the new patient was "referred by" and the second sheet provides space for the doctor's diagnosis and description of treatment. The patient interview sheets indicated directory referrals as follows:

Year of Directory Number of Patients Referred
 1976 165
 1977 29
 1978 182

The accountant subtracted 29 from the mean of the 1976 and 1978 referrals to arrive at the number of 144 patients who should have been referred by the directories if the listings had been correct. Based on the medical information on the 165 referred-patient interview sheets of 1976, the patients were divided into seven disease categories. The calculated 144 lost patients were then assigned the same percentage of disease categories as the 1976 referrals. Lost profits were determined on the projected treatments and length of treatment for the number of "lost" patients assigned *806 to each disease category. "Lost" acne patients, for example, were projected to seek treatment every three weeks for three to five years, "lost" psoriasis patients to seek treatment for three to four years, and "lost" skin cancer patients would have to return "somewhat." The accountant projected a loss of gross fees of $100,230.00 due to the directory error. He subtracted eight percent for lab fees, office and medical supplies to reach a net figure of $92,212.00. Expenses of $717.00 for advertising expenses in 1977 were then added for a projected loss of net profits of $92,929.00.
As its first issue on appeal, Southern Bell claims that the trial court abused its discretion in admitting the original patient interview sheets into evidence after precluding defendant from discovering the exhibits prior to trial.
We find applicable to the case the statement of the court in International Telephone and Telegraph Corporation v. United Telephone Company of Florida, 60 F.R.D. 177, 186 (M.D.Fla. 1973) that:
[T]he failure of a party to allow pretrial discovery of confidential matters which that party intends to introduce at trial will preclude the introduction of that evidence.
See, e.g., Backos v. United States, 82 F.R.D. 743, 745 (E.D.Mich.S.D. 1979); Duffy v. Currier, 291 F. Supp. 810, 815 (D.Minn. 1968); A & M Records, Inc. v. Heilman, 75 Cal. App.3d 554, 142 Cal. Rptr. 390, 397-398 (1977).
In July of 1978, Southern Bell requested that the appellee corporation produce "any and all patient interview sheets from July 1975 to the present." Appellee subsequently moved for a protective order asserting that the sheets contained confidential and privileged medical information. The order was granted by the court. Although Southern Bell was later permitted to copy the names, numbers and addresses of those referred by the directories, Southern Bell was not permitted, despite requests, to see a copy of the patient interview sheets containing the medical information until the evening after the first day of trial on May 7, 1980. The trial judge had rejected all earlier attempts of Southern Bell to discover the medical information and, in addition, had ruled during pretrial discovery that the patient interview sheets containing the medical information would not be admitted into evidence. The trial judge stated:
The point is, what you did was choose to protect the privilege of the patient when it suited your purpose and to ignore it when it did not suit your purpose, and to the extent that you did so, that is fine, except I am now not going to let you saddle the other side with the burden of not having been able to inquire on the basis of it.
At trial, however, the trial judge reversed himself so that the court would not, in his words, end up "with a totally inaccurate set of figures." The court then stated that if Southern Bell desired to view the sheets it could do so that evening. After viewing the patient interview sheets, Southern Bell's expert informed the court the next morning that at least one week would be required to examine the four thousand to five thousand patient interview sheets.
Though we agree with the appellee-corporation that the calculation of damages by percentage breakdown of patients by category of treatment came as no surprise to Southern Bell and the sheets can not be withheld from evidence solely on that basis, we agree with Southern Bell that denying it inspection of the patient interview sheets until after the first day of trial did not allow Southern Bell sufficient time to defend against the reliability of the patient interview sheets. That there exists a real question of reliability in the calculation of damages based on the referral and medical information contained in the sheets is demonstrated by the fact that appellee-corporation projects a $100,230.00 loss of gross profits and a $92,924.00 loss of net profits from a loss of 144 referrals. At the same time, using the 1978 figures  prepared admittedly in anticipation of litigation  appellee-corporation shows an actual combined increase for both the appellee and Dr. *807 Kaminester of only $17,713.00 in net profits from an increase of 153 referrals.[2] Even assuming that all of the increase was due to patients referred by the directories, the figures raise questions of reliability. Southern Bell was unable to check the medical information which was the basis of the damage claim in order to verify or to prepare challenges to the projected disease categories, treatments, projections of treatment duration, or the assumption that the "lost" patients would remain with Dr. Kaminester for the projected durations. We hold that the trial court abused its discretion in admitting the patient interview sheets containing the medical information into evidence. See, e.g., Rommell v. Firestone Tire & Rubber Co., 394 So.2d 572 (Fla. 5th DCA 1981).
As part of its second point on appeal, Southern Bell argues that the trial court erred in denying its motion for directed verdict and new trial because the corporation failed to deduct the compensation it paid to Dr. Kaminester in computing net profits rendering its proof of lost profits inadequate.
In proving damages caused by lost net profits, see Augustine v. Southern Bell Telephone & Telegraph Co., 91 So.2d 320 (Fla. 1956); E.T. Legg & Associates, Ltd. v. Shamrock Auto Rentals, Inc., 386 So.2d 1273 (Fla.3d DCA 1980), pet. for rev. denied, 392 So.2d 1379 (Fla. 1981); Petrulli v. Approved Dry Wall Construction, Inc., 284 So.2d 27 (Fla.3d DCA 1973), cert. denied, 292 So.2d 18 (Fla. 1974), a corporation, in arriving at the net loss, must deduct the expense of salaries paid to its officers, see e.g., Innkeepers International Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 106 (Fla. 1976).
We do not find, as appellee argues, that there was sufficient evidence to support a jury's necessarily finding either that Dr. Kaminester's compensation would not have increased due to additional patients, or that Dr. Kaminester's compensation was not an expense item attributable to treatment of the additional patients. Appellee's accountant testified that payroll, depreciation, dues and subscriptions, advertising, payroll tapes, and retirement plan expenses would be expenses incurred by the professional association. Though these expenses, many of direct benefit to Dr. Kaminester, would have to be considered in computing net profits, the accountant also testified that he only deducted as expenses laboratory fees and office and medical supplies. We also reject appellee's argument that when the corporation is a professional association whose officer is a physician, an exception should be made to the general rule that a showing of loss of net profits requires a corporation to deduct the compensation paid to its officer. Cf. Partridge v. Norair Engineering Corp., 301 F.2d 247 (D.C. Cir.1962) (cost of partner's services must be included in computing net profits). A practitioner who incorporates should not be allowed to enjoy the benefits of the corporate form, then, because it would be economically advantageous to the practitioner in a suit brought by the corporation seeking damages, be free to disregard that corporate form. We hold that the failure to deduct the compensation of Dr. Kaminester in the computation of net profits, rendered the proof of damages inadequate as a matter of law, and that the court erred in not granting Southern Bell's motion for a new trial.
Because we find these issues dispositive, we do not consider Southern Bell's other points on appeal.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[1] The doctor's address was listed as 201 Bermuda Lane, Palm Beach instead of his actual address of 860 U.S. Highway Number One, North Palm Beach. The doctor's name, specialty, and telephone number were correctly listed in both directories.
[2] The following monetary figures represent sums generated by all of the patients treated during the given year, not just those referred by the directories:

Directory Compensation paid Net Profits Patients
 Year Dr. Kaminester for Corp. Referred
 1976 $ 90,748 $ 3,833 165
 1977 146,000 3,349 29
 1978 151,888 15,774 182