690 So.2d 617 (1997)
FU SHENG INDUSTRIAL CO., LTD., a corporation organized under the laws of the Republic of China, Appellant,
v.
T/F SYSTEMS, INC., a Delaware corporation, and Robert C. Malt, an individual, Appellees.
SOUTHEAST CAPITAL FINANCING, INC., a Florida corporation, and Purifiner Distribution Corp., an Illinois corporation, Appellants,
v.
T/F SYSTEMS, INC., a Delaware corporation, Robert C. Malt, an individual, and Fu Sheng Industrial Co., Ltd., a corporation organized under the laws of the Republic of China, Appellees.
Nos. 95-0826, 95-1074.
District Court of Appeal of Florida, Fourth District.
February 26, 1997.
Rehearing and Certification Denied April 16, 1997.
*619 William S. Graessle of Winegeart & Graessle, P.A., Jacksonville, for Appellant-Fu Sheng Industrial Co., Ltd.
David Charles Masselli and William C. Lane of Masselli & Lane, P.C., Arlington, VA, for Appellants-Southeast Capital Financing, Inc. and Purifiner Distribution Corp.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellee-T/F Systems, Inc.
Richard S. Tolbert, West Palm Beach, for Appellee-Robert C. Malt.
DELL, Judge.
Sua sponte, we consolidate Case No. 95-0826 with Case No. 95-1074. These consolidated appeals arise out of a post-judgment order that awarded appellees T/F Systems, Inc. (T/F Systems), and Robert Malt (Malt) delay damages, jointly and severally, against appellants Fu Sheng Industrial Co., Ltd. (Fu Sheng), Southeast Capital Financing, Inc. (Southeast) and Purifiner Distribution Corp. (PDC).[1]
Refineco Manufacturing Corporation (Refineco) held the patent on an oil reclamation device known as the "Purifiner." Refineco entered into a contract with T/F Systems wherein Refineco promised certain distribution rights in a four-state territory to T/F Systems for the product which would be sent to T/F Systems from PDC. The contract provided that if PDC failed to deliver the requisite amount of product to T/F Systems, then T/F Systems would become entitled to the exclusive right to manufacture and market the product on a worldwide basis. PDC assumed the obligations assigned to T/F Systems in a separate contract with Refineco. On June 10, 1990, PDC failed to fulfill its responsibilities under its contract. On July 27, 1990, Malt became the owner of the Refineco patents. During this time frame, PDC entered into a contract giving Fu Sheng the right to manufacture the product for PDC. Fu Sheng thereafter established a new company, Southeast, to serve as the financing arm for PDC. Fu Sheng did not directly finance, assist nor market the product for PDC.
In 1990, appellee T/F Systems filed suit for declaratory judgment to determine its right to manufacture and market the Purifiner. T/F Systems joined Southeast, PDC, Fu Sheng and Malt as codefendants in the declaratory relief action. T/F Systems also sought a money judgment against PDC based upon a loan that T/F Systems claimed had been assumed by PDC. Malt, as owner of the Purifiner patent, filed a counterclaim and a cross-claim seeking to recover a five percent royalty on all sales of the Purifiner. T/F Systems alleged that all parties claimed certain rights and interests to manufacture and market the Purifiner device through various agreements with Refineco.
After a non-jury trial, the trial court entered a judgment in which it found that: a letter agreement between T/F Systems and Refineco was a valid, enforceable contract; that on June 10, 1990, T/F Systems, pursuant to that agreement, obtained the exclusive right to manufacture and market products including the Purifiner product, the right to manufacture products under all of the Refineco foreign patents and the right to use the Purifiner trademark on all products manufactured and marketed by T/F Systems. The trial court also determined that, pursuant to an agreement with Refineco, PDC and Southeast were liable to pay T/F Systems for a loan in the amount of $110,000. The trial court ordered T/F Systems to account to *620 Malt for all products sold under Malt's patents since September 21, 1990 and to pay a royalty of five percent on the list price of those units. The court did not award Malt royalties for sales made by PDC. The trial court also provided in its final judgment that "Purifiner Distribution Corp. shall immediately cease and desist from manufacturing the patented products and marketing same outside of its authorized territory as defined in its distribution agreement."
On September 16, 1991, Fu Sheng, Southeast and PDC appealed from the foregoing judgment. Malt cross-appealed the trial court's failure to require PDC to account to him for products manufactured and sold in violation of his patent rights. The trial court denied PDC's motion to set a supersedeas bond. However, this court relinquished jurisdiction and ordered the trial court to set an appropriate bond. T/F Systems and Malt sought a $15,000,000 bond. The trial court set the bond at $1,000,000. This court denied T/F Systems' and Malt's motion to seek review of the sufficiency of the bond.
The judgment in favor of T/F Systems was affirmed but that part of the judgment that failed to require PDC to account to Malt for the five percent royalty was reversed and the case was remanded for further proceedings. See Southeast Capital Fin., Inc. v. T/F Sys., Inc., 616 So.2d 482 (Fla. 4th DCA 1993). On remand, T/F Systems and Malt moved to execute on the supersedeas bond and to set an evidentiary hearing seeking to recover delay damages. The trial court ordered the surety to pay T/F Systems the amount of its money judgment against Southeast and PDC. The trial court reserved jurisdiction to award costs and to set an evidentiary hearing to determine the amount of delay damages.
T/F Systems alleged in its claim for delay damages that: "During the pendency of the appeal, Purifiner continued to manufacture and market the products, and as a result of the delay during the pendency of the appeal, T/F suffered additional money damages." Malt claimed that PDC had not paid royalties due to him for sales of the Purifiner product. The hearing on delay damages was first scheduled for August 11, 1993. The trial court, with the consent of appellants, granted T/F Systems' motion for a continuance. The hearing was rescheduled on at least two other occasions and then finally set on May 16, 1994. T/F Systems filed a notice of conflict of trial and scheduled a hearing on its motion for a continuance on May 11, 1994.
At the hearing, T/F Systems withdrew its motion for a continuance. Appellants then moved for a continuance based upon the unavailability of witness Steve Myrick. Appellants' counsel informed the court that Mr. Myrick was unavailable for trial due to his own illness and that of his wife and that he was Southeast's sole corporate representative with knowledge of all matters pertinent to the hearing. The trial court denied appellants' motion for continuance and the case proceeded to trial. Ultimately, the trial court relied upon a "forecast" presented by Mr. Myrick to Malt as the sole basis for the amount of damages awarded to T/F Systems for lost profits on sales by PDC and to Malt for royalties. The trial court also utilized the forecast to compute the gross profit margin that T/F Systems would have realized from the forecasted sales for PDC during the delay period. The trial court entered judgment in favor of Malt and against appellants for royalties in the amount of $418,980.54, plus costs, and in favor of T/F Systems and against appellants for lost profits on sales made by PDC and for lost prospective profits and costs in the total amount of $12,476,694.43.
Appellants raise four points in this appeal. They contend that: the trial court abused its discretion in denying their motion for a continuance; the trial court's award of delay damages for sales made by PDC was not supported by competent evidence; the trial court erred in awarding T/F Systems damages for lost opportunities; and the trial court erred in awarding delay damages in excess of the balance remaining on the supersedeas bond. Additionally, Fu Sheng contends that it cannot be held liable for PDC's sales because T/F Systems failed to prove that Fu Sheng caused its damages. We find merit in appellants' arguments and reverse and remand this cause for a new trial.
*621 First, we agree with appellants' argument that the trial court abused its discretion when it failed to grant a continuance based upon Mr. Myrick's unavailability for trial. Upon learning that T/F Systems had withdrawn its motion for continuance, Southeast immediately moved for a continuance and stated in the motion:
[U]ndersigned counsel was informed by Mr. Myrick that he was recently hospitalized as the result of blacking out and that his wife [was] also recently hospitalized with manic-depression. Mr. Myrick has two children aged 10 and 12 and his wife is currently rehabilitating at home. He is unable to travel to West Palm Beach for the hearing which is scheduled for Monday, May 1619, 1994.
3. Mr. Myrick is essential to this case, not only as the main witness but also as the sole corporate representative with knowledge of all matters involved pertaining to this hearing. It is essential and necessary for Mr. Myrick to appear at trial and to assist counsel.
Attached to the motion for continuance was a doctor's note stating that he had treated Mr. and Mrs. Myrick for "severe medical problems" and that he had recommended Mr. Myrick refrain from business or travel for thirty days. Appellants' attorney also informed the court:
I am here representing to the court the only reason we would ask for a continuance would be the situation with Steve Myrick's wife and the fact that she has been Baker-Acted. I need somebody to testify to two issues in this case, and he is, I wouldn't say, the only one. He's the primary one that could. When this happened I immediately made a bunch of phone calls to see if I can get somebody to testify to the issues. The problem is the other people that could testify are in litigation.
T/F Systems and Malt argue that appellants failed to establish Mr. Myrick's inability to appear at trial and that he was a necessary witness. We disagree. Appellants made a sufficient showing that Mr. Myrick was unavailable for trial and the proceedings at trial and the court's final judgment confirm appellants' representations as to the importance and need for Mr. Myrick's testimony.
The trial court stated in its final judgment:
Malt testified that in 1991, he met with Steve Myrick ("Myrick"). At that time, Myrick represented himself as an agent of Southeast and Fu Sheng. Myrick told Malt that Fu Sheng was a large industrial corporation run by a Taiwan family named Lee. Myrick told Malt that the Lees had treated Myrick like a son and that he was responsible for the management of Fu Sheng's affairs in the United States. Myrick also told Malt that Fu Sheng had high hopes for the Purifiner product and offered to buy Malt's patents obtained through the Refineco foreclosure judgment.
In conjunction with this presentation, Myrick provided Malt with a copy of Fu Sheng's own forecasts for the sale of Purifiner units during the 1991-95 calendar years. Malt Exhibit 14. These forecasts, similar to the forecasts made by Frank DePaul at the bond hearing in this case, reflect plans to manufacture and sell thousands of units worth millions of dollars during the Damage Period.
Without having the benefit of Mr. Myrick's testimony, the trial court used the forecast as the sole basis for computing sales and lost profits during the delay period. The need for Mr. Myrick's testimony is also shown by the trial court's reliance upon the "Purifiner Invoice Summary" as a basis for concluding that appellants failed to produce complete and accurate information of their sales during the delay period. The trial court highlighted the importance of Mr. Myrick's testimony when it stated in its final judgment:
During discovery on this matter, T/F and Malt sought documents to determine the Purifiner Defendants' volume of sales activity while the Final Judgment was stayed. From the evidence at trial, the Court finds that the Purifiner Defendants produced incomplete, misleading and inadequate documentation which did not reflect the true value of their sales activity during the appeal.
Steve Myrick, a PDC representative, provided Malt a "Purifiner Invoice Summary" (the "Summary") allegedly reflecting *622 sales made by PDC from September 28, 1990 through March 24, 1993....
... Neither the court nor the parties can conclude that the invoices reflect all of Fu Sheng's shipments. The difficulty is compounded by the fact that no witness with knowledge of Fu Sheng's business activities testified at trial.

(Emphasis added).
In Ziegler v. Klein, 590 So.2d 1066 (Fla. 4th DCA 1991), this court stated:
A motion for continuance is addressed to the sound judicial discretion of the trial court and absent abuse of that discretion the court's decision will not be reversed on appeal. However, when undisputed facts reveal that the physical condition of either counsel or client prevents fair and adequate presentation of a case, failure to grant a continuance is reversible error.
Id. at 1067 (citations omitted).
We hold that the trial court abused its discretion when it failed to continue the trial of this cause. Mr. Myrick was a key witness and the trial court's failure to grant appellants' motion for a continuance prevented appellants from making a fair and adequate presentation of their case.
Appellants next contend that the trial court's award of delay damages for sales made by PDC and Fu Sheng was not supported by competent and sufficient evidence. Appellants make three arguments in support of this contention. First, the trial court erred when it used Malt's Exhibit 14 (the purported forecast of sales by Fu Sheng) as the sole basis of computing the amount of the award of lost profits. Second, the trial court erred when it based its award on a fifty-eight percent gross profit margin, and third, the record does not support the trial court's conclusion that appellants' misconduct justified the use of the forecast as the basis for damages. We agree with appellants' arguments.
First, Malt's Exhibit 14 entitled "Forecast" is a piece of paper that contains a matrix of numbers for the five-year period beginning 1991 through 1995 and purportedly indicates sales, costs of goods, costs of sales, total costs of sales and pre-tax profit. The forecast is an unauthenticated, unsupported and unexplained document which, according to Malt's testimony, was presented to him by Mr. Myrick as a forecast of Fu Sheng's anticipated sales and profits for the years 1991 to 1995. The trial court's failure to grant a continuance prevented Mr. Myrick from testifying concerning the content of the forecast. Neither T/F Systems nor Malt presented any evidence to authenticate the validity of the volume of sales identified in the forecast. Furthermore, the record contains evidence that contradicts the forecast, including invoices, summaries of invoices and the testimony of a former PDC officer, Michael DePaul, that PDC never came close to meeting the sales projected in the forecast.
In Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 415 So.2d 865 (Fla. 1st DCA 1982), the First District Court of Appeal addressed the standard of proof required for an award of anticipated profits:
The general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. But the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed. Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936). "The requisite to their allowance is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained." 166 So. at 217. In Welbilt Corporation v. All State Distributing Co., 199 So.2d 127 (Fla. 3rd DCA 1967), loss of future profits was denied because no showing was made of overhead, costs or method by which the estimated unit profits or number of units could be determined.
Id. at 867 (citations omitted). Here, the predicted sales and profits were not established with any certainty. The record is devoid of any evidence showing the method used to determine the estimated sales and profit and the record contains evidence that PDC's sales did not even remotely reach the level of the forecast. Without evidence authenticating and corroborating its reliability and explaining the manner in which it was computed, the forecast was too speculative to *623 provide a basis for awarding Malt royalties or computing the amount of lost profits sustained by T/F Systems as a result of PDC's sales.
Second, appellants argue that the trial court erred when it chose to compute T/F Systems' damages for sales made by PDC based upon the percentage of gross profits that PDC would have derived from the sales projected in the forecast.
T/F Systems and Malt state in their answer briefs that appellants failed to challenge the method used to calculate the damages for lost profits. Appellants do not respond to this argument. It appears from the transcript that during the course of the trial appellants did not object to the experts' testimony concerning the gross profits. However, the record shows that on the first day of trial appellants filed a motion to restrict proof on plaintiffs' claim to damages for delay together with a supporting memorandum of law. In the memorandum, appellants argued that T/F Systems had the burden to establish its damages based upon net profits. Appellants made the same argument following entry of the final judgment in their motion for new trial. The record does not contain an order on appellants' motion to restrict proofs. However, since we have concluded that this matter must be remanded for a new trial, we will address the method used by the trial court in computing T/F Systems' claim for lost profits.
The trial court should have required an accounting for all costs associated with the selling of the Purifiner. See Ballard v. Krause, 248 So.2d 233 (Fla. 4th DCA 1971). In Born v. Goldstein, 450 So.2d 262 (Fla. 5th DCA 1984), the district court stated:
Proof of lost profits is generally derived from proof of income and expenses for a reasonable period of time prior to the breach. American Motorcycle Institute v. Mitchell, 380 So.2d 452 (Fla. 5th DCA 1980). Where the evidence only pertains to gross receipts or fails to establish expenses with specificity, an award of damages will be reversed.
Id. at 264 (citations omitted).
We agree with appellants' argument that lost profits should have been based on the net profit T/F Systems would have earned from sales made in violation of the injunction.
Third, we find merit in appellants' argument that the trial court erred when it concluded that appellants' misconduct justified the use of the forecast as the sole basis for computing the lost profits sustained by T/F Systems. The trial court's final judgment makes it clear that its reliance upon the forecast of sales was punitive in nature. The trial court stated that: "From the evidence at trial, the court finds the Purifiner defendants produced incomplete, misleading and inadequate documentation which did not reflect the true value of their sales activity during the appeal." From this premise, the trial court went on to state that:
The Court's decision to use Fu Sheng's [Mr. Myrick's] own forecasts in determining the Purifiner Defendants' sales volume also derives from the "well-known and ancient doctrine that when a party frustrates proof of damages, either by withholding facts or through inaccurate recordkeeping, any doubts about the actual assessment of damages will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value."
(Citations omitted).
The record does not support the trial court's finding of misconduct. Malt had access to the records in possession of appellants' counsel and had an opportunity to select those records that he wished to have copied. He selected only part of the records presented to him. Appellants responded to T/F Systems' discovery requests by producing documents that formed the basis of expert opinions presented by appellants and appellees. Neither T/F Systems nor Malt challenged the discovery furnished by appellants. The discrepancies in records selected by Malt and those furnished in response to discovery requests do not support the trial court's conclusion that appellants prevented T/F Systems and Malt from determining the extent of their damages. The trial court misplaced its reliance on Bob Willow Motors, Inc. v. General Motors Corp., 872 F.2d 788 (7th Cir.1989), Sir Speedy, Inc. v. L & P *624 Graphics, Inc., 957 F.2d 1033 (2d Cir.1992) and Miller v. Allstate Insurance Co., 573 So.2d 24 (Fla. 3rd DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991). We think it is important to note that in any event the unexplained and unauthenticated forecast would not have provided a competent and sufficient basis to support the award for lost profits resulting from PDC's sales.
Appellants also challenge the trial court's award of damages for lost opportunities or lost prospective profits based upon three contracts or potential contracts. In W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla.1989), the supreme court established the standard for the award of lost prospective profits:
We follow the holding in Twyman. A business can recover lost prospective profits regardless of whether it is established or has any "track record." The party must prove that 1) defendant's action caused the damage, and 2) there is some standard by which the amount of damages may be adequately determined.
Id. at 1351. In the instant case, the trial court awarded damages for prospective lost profits related to an Australian contract, a European contract and a Mexican contract.
On October 30, 1991, T/F Systems agreed to give a company named Econoquip the exclusive right to distribute the Purifiner within Australia. The contract provided for minimum quarterly purchases commencing in 1992 and continuing for a period of fifteen years. On December 16, 1992, a representative of T/F Systems issued to Econoquip a letter containing a notification of cancellation of the contract. The record shows that until that point Econoquip had been fulfilling its minimum purchase requirements. The T/F Systems representative testified that he terminated the contract because "They weren't going to purchase the minimum requirements. They were going to purchase [PDC products]."
The record contains no evidence that T/F Systems or Econoquip would have performed under the terms of the contract for the entire fifteen-year period or that Econoquip would have failed to meet its obligation to make the minimum purchases required by the contract. The record shows that T/F Systems terminated the contract while it was in good standing. We therefore conclude that under W.W. Gay T/F Systems failed to meet its burden of proving that the Australian contract failed because of PDC's actions. T/F Systems also failed to prove that it would have sustained damages over the fifteen-year term of the contract. Therefore, we reverse the award of damages for loss of the Australian contract.
We also conclude that the record does not support the trial court's award of lost prospective profits related to the European and Mexican contracts. The record shows that T/F Systems had entered into negotiations with a company named Ibernet to obtain a European distribution contract. Both T/F Systems and an Ibernet representative testified that the reason the contract was not entered into after the final judgment was the protracted litigation. Other than the appeal, there is no evidence of any conduct on the part of appellants that interfered with T/F Systems' negotiations with Ibernet. Likewise, there is no evidence that appellants' conduct caused the loss of the Mexican contract. Appellants correctly argue that the law exacts no penalty for a party's decision to pursue an appeal. See City of Jacksonville v. Brentwood Golf Course, Inc., 338 So.2d 1105 (Fla. 1st DCA 1976). We hold that the trial court erred when it awarded damages for lost opportunities.
A final question remains as to whether appellants' liability for delay damages is limited to the balance remaining on the $1,000,000 supersedeas bond. After entry of the final judgment in the underlying proceeding, appellants moved for a stay of execution of the judgment. They filed a motion to set a reasonable supersedeas bond. The trial court set the bond at $1,000,000. Appellants contend that their liability for delay damages is limited to the amount of the supersedeas bond.
In City of Jacksonville, the district court concluded:
It was error to enter judgment against the City on account of "damages for delay and depreciation." An unsuccessful appellant *625 has no duty, independent of that voluntarily undertaken by posting a bond to avoid execution, to pay the successful appellee damages incurred by stay of execution during appellate delay.
. . . .
Even when the successful appellee has been positively benefited by supersedeas and the passage of time on appeal, those benefits are disregarded in calculating "damages for delay" unless the bond requires that such benefits be taken into account.
. . . .
When as here a bond was not required for supersedeas, there is consequently no obligation. For the appeal itself the law exacts no price or penalty.

City of Jacksonville, 338 So.2d at 1106 (emphasis added).
Here, the bond expressly provided:
NOW THEREFORE, if the Principal shall satisfy any money judgment contained in the judgment in full, including, if allowed by law, costs, interest, attorney's fees, and damages for delay in the event said appeal is dismissed or said judgment is affirmed, then this obligation shall be null and void; otherwise to remain in full force and effect.
By posting the supersedeas bond, appellants bound themselves for delay damages. Malt apparently does not dispute appellants' argument and concedes that the filing of the supersedeas bond is a necessary condition to the recovery of delay damages. T/F Systems, on the other hand, argues that City of St. Petersburg v. Wall, 419 So.2d 1167 (Fla. 2d DCA 1982), approved, 475 So.2d 662 (Fla. 1985) conflicts with City of Jacksonville because the Second District Court of Appeal in City of St. Petersburg allowed recovery for delay damages and costs resulting from a stay without the posting of a bond. T/F Systems did not direct this court's attention to the supreme court's decision in City of St. Petersburg v. Wall, 475 So.2d 662 (Fla.1985), where the court dispensed with the argument that City of Jacksonville conflicts with City of St. Petersburg:
We agree with the district court that City of Jacksonville is distinguishable from the present case and presents no conflict in decisions. In City of Jacksonville, the appellee did not move the court to vacate the stay, impose conditions on the stay, or require the posting of a supersedeas bond. The appellant in City of Jacksonville undertook no duty to pay damages incurred by the stay of execution during the appeal. By contrast, as the district court found in the present case:
Here the city was on notice that we recognized its potential liability even though we excused it from the expense of posting a bond....
Id. at 663 (quoting City of St. Petersburg, 419 So.2d at 1169). We reject T/F Systems' argument and conclude that only in exceptional circumstances such as those in City of St. Petersburg may delay damages be recovered without the posting of a supersedeas bond. In City of Coral Gables v. Geary, 398 So.2d 479 (Fla. 3rd DCA 1981), the district court disapproved the award of attorney's fees as delay damages because the bond did not provide for same. The court affirmed the award for delay damages, stating: "The City having posted the bond, it was appropriate for the trial court to assess damages for delay if the original judgment was affirmed." Id. at 480.
The question remains, however, as to whether a successful appellee may recover an amount for delay damages in excess of the amount of the bond. It is well settled that had appellants violated the terms of the trial court's injunction without a bond, they would have been subject to contempt. Coincidentally, the record shows that before the order setting the supersedeas bond, a motion for contempt had been filed in this cause. The filing of the supersedeas allowed appellants to continue their business operations. T/F Systems and Malt argue that the bond only partially collateralized the amount of their delay judgment. They also argue that appellants misplaced their reliance on the supreme court's opinion in Parker Tampa Two, Inc. v. Somerset Development Corp., 544 So.2d 1018 (Fla.1989). We are not persuaded by their argument that an injunction bond issued pursuant *626 to Florida Rule of Civil Procedure 1.610 and section 60.07, Florida Statutes (1987) materially differs from a supersedeas bond posted to stay the effect of an injunction rendered by final judgment. In Parker Tampa Two, the supreme court stated:
Though the rule and statute are silent as to whether liability is limited to the bond amount, two state district courts have addressed the issue and both have followed the majority view. City Nat'l Bank v. Centrust Savings Bank, 530 So.2d 317 (Fla. 3rd DCA 1988); Parker Tampa Two. We too adopt the majority view and limit liability to the bond amount where the injunction is obtained in good faith.
When a court initially sets an injunction bond, this constitutes the court's determination of foreseeable damages based on the good faith representations that are before it. Fla.R.Civ.P. 1.610(b). Should this amount prove insufficient or excessive, an affected party is free to move for modification. A court order denying a motion to modify is directly appealable. Fla. R.App.P. 9.130(a)(3)(B). Limiting liability to bond amount thus provides an orderly step-by-step procedure whereby all parties can be continually apprised of the consequences of their actions. To hold the obtaining party fully liable would in many cases expose the party to potentially staggering consequential damages difficult or impossible to project.
Parker Tampa Two, 544 So.2d at 1021 (citations omitted) (footnote omitted). We see no reason that the procedures established in Parker Tampa Two should not be applied to a supersedeas bond posted to stay the effect of an injunction while on appeal. Therefore, on remand, appellants' liability for delay damages shall be limited to the amount of the surety's remaining obligation on the supersedeas bond.
In addition to the points raised by appellants, Fu Sheng contends that it cannot be held liable for PDC's sales and that the trial court erred when it held it jointly and severally liable for delay damages. Fu Sheng concedes that an injunction is binding on all those with notice of its provisions and that it was subject to the injunction by virtue of being a named defendant in this action. Fu Sheng argues, however, that having notice of the injunction did not make it automatically jointly liable for the acts of one who violated its provisions. T/F Systems and Malt point to the trial court's finding that Fu Sheng acted in concert with PDC in violating the injunction. The record shows that Fu Sheng manufactured products for PDC. As we have discussed above, the trial court did not require T/F Systems or Malt to prove the amount of sales made by PDC. The trial court relied on the forecast and required no proof of Fu Sheng's participation in sales made by PDC. Additionally, although now moot, the record contains no evidence that Fu Sheng participated with PDC in causing T/F Systems' damages for lost opportunities or that the trial court required proof that Fu Sheng acted in any manner to cause this element of damage.
We hold that Fu Sheng may be held jointly and severally liable with PDC for those delay damages which were caused by PDC and Fu Sheng acting in concert to violate the injunction. However, Fu Sheng may not be held jointly and severally liable for those acts of PDC in which it did not participate.
Accordingly, we reverse the final judgment and remand this cause for a new trial consistent with this opinion.
REVERSED and REMANDED.
POLEN and STEVENSON, JJ., concur.
NOTES
[1] Fu Sheng, Southeast and PDC will be referred to collectively as appellants.