847 So.2d 1123 (2003)
Guillermo SOSTCHIN, Trustee, d/b/a Demeris # 2, Appellant,
v.
DOLL ENTERPRISES, INC., Appellee.
Nos. 3D01-3392, 3D01-2490.
District Court of Appeal of Florida, Third District.
June 25, 2003.
*1124 Ponzoli Wassenberg & Sperkacz and Lauri Waldman Ross and Philip D. Parrish, for appellant.
Stabinski & Funt and Lawrence & Daniels and Adam H. Lawrence, for appellee.
Before SCHWARTZ, C.J., and WELLS, J., and NESBITT, Senior Judge.

On Clarification Granted
NESBITT, Senior Judge.
On March 24, 1998, a fire destroyed the multi-tenant commercial building in downtown Miami in which Appellee Doll Enterprises, Inc. ("King Shoes") rented space from Appellant Guillermo Sostchin, Trustee ("Landlord"). A jury verdict found Landlord liable in negligence for causing *1125 the fire and awarded King Shoes $1,300,000 in damages, including $1,180,000 in "future lost profits" from the date of the fire to July 31, 2004, the end of King Shoes' ten year lease. On appeal, Landlord challenges certain evidentiary rulings made by the trial court in connection with Landlord's liability for causation of the fire and challenges the legal sufficiency of the damages award.
We conclude there was no reversible error as to the finding of liability. However, we find that the lost profits damages award was improperly based upon gross profits, rather than net profits, and was, to say the least, speculative. The damages award must, accordingly, be vacated and a new trial conducted as to damages only.[1]
The evidence shows that King Shoes commenced operations selling inexpensive shoes at Landlord's property in 1994.[2] During the first three years of operation King Shoes incurred an accumulated net loss, its tax returns indicating a loss of $16,220 in 1994, a profit of $11,833 in 1995, and a loss of $1,513 in 1996. In 1997, the year immediately preceding the fire, King Shoes had its best year, and its tax return indicates it made a net profit of $31,762. Within 6 weeks of the fire King Shoes reopened in a different building approximately a block and a half away with the same employees, and was still in business when this lawsuit was filed in 1999. King Shoes closed its business in the summer of 2000, about a year prior to the trial, and claims it incurred losses at the new location.
Despite the modest and short term nature of King Shoes' pre-fire profits, King Shoes' expert accountant opined that the fire had resulted in lost prospective profits in the following amounts: 1998: $199,397; 1999: $170,056; 2000: $164,195; 2001: $169,121; 2002: $174,195; 2003: $179,421; 2004: $130,356. The accounting alchemy by which this humble enterprise was transformed into an engine of commerce is made possible only by first improperly failing to include officer compensation as part of the corporation's expenses, and thereby basing all assumptions upon gross profits, rather than net profits as the law requires.
In interrogatory answers, King Shoes explained the methodology by which it concluded that its lost profits resulting from the fire were approximately $1.2 million:
These figures were arrived by calculating the growth rate of the company's generated net income from 1996 to 1997 which amounted to 35.26%. Using this growth rate, the company's projected net income was calculated for the years 1998, 1999, and 2000. A five year average of the net income for the years 1996 through 2000 was taken which amounted to $159,413. This five year average represents the business' stabilization point. This figure was then increased by 3% which represents the estimated annual inflation.
The interrogatory answers further stated:
In reaching the above calculations, all expenses were deducted except that of compensation to officers. This amount was not deducted because it was not an *1126 expense of the corporation but anticipated profits.
At trial, King Shoes' expert accountant testified that his lost profit calculations involved adding up his estimates of the projected "Net Profit Available to Owner" for each remaining year on the lease after the fire. He explained what was included in "Net Profit Available to Owner":
Q: What does the second line of the chart mean?
A: The second line ["Net Profit Available to Owner"] is after you record the costs of sales and all of the fixed and variable expenses for this business, this is the net profit available to the owner to pay himself however he wishes in either salary or as a dividend. (Emphasis added).
King Shoes' tax returns and its accountant's trial testimony and demonstrative exhibits clearly show that officer compensation paid to the corporation's owner was not excluded from the calculation of net profits as it is required to be, and these improperly inflated figures were used as a jumping off point to extrapolate continued rapid growth.[3] Such proof of future lost profits is inadequate as a matter of law. We addressed this issue in Southern Bell Tel. And Tel. Co. v. Kaminester, 400 So.2d 804 (Fla. 3d DCA 1981):
[T]he trial court erred in denying.. the motion for new trial because the corporation failed to deduct the compensation it paid to Dr. Kaminester in computing net profits rendering its proof of lost profits inadequate. In proving damages caused by lost net profits, a corporation, in arriving at the net loss, must deduct the expense of salaries paid to its officers... We also reject appellee's argument that when the corporation is a professional association whose officer is a physician, an exception should be made to the general rule that a showing of loss of net profits requires a corporation to deduct the compensation paid to its officer ... A practitioner who incorporates should not be allowed to enjoy the benefits of the corporate form, then, because it would be economically advantageous to the practitioner in a suit brought by the corporation seeking damages, be free to disregard that corporate form. We hold that the failure to deduct the compensation of Dr. Kaminester in the computation of net profits rendered the proof of damages inadequate as a matter of law, and that the court erred in not granting Southern Bell's motion for a new trial.
400 So.2d at 807 (citations omitted). See also Fu Sheng Indus. Co., Ltd. v. T/F Systems, Inc., 690 So.2d 617, 623 (Fla. 4th DCA 1997)(lost profit damages must reflect net profits deducting all costs); State Dept. of Transp. v. Murray, 670 So.2d 977, 979 (Fla. 1st DCA 1996)(determination of lost profits must deduct salary paid to owner/supervisor); State Dept. of Transp. v. Manoli, 645 So.2d 1093, 1094 (Fla. 4th DCA 1994)(where salary paid to business owner was not deducted before calculating lost profits expert testimony was based on misconception of law and was inadmissible); Indian River Colony Club, Inc. v. Schopke Const. & Engineering, 592 So.2d 1185, 1187 (Fla. 5th DCA 1992)(lost profits analysis must deduct the actual supervisory salary paid); Physicians Reference *1127 Laboratory, Inc. v. Daniel Seckinger, M.D. and Associates, P.A., 501 So.2d 107, 109 (Fla. 3d DCA 1987)(all fixed and variable costs must be deducted from proceeds in determining lost profits); Born v. Goldstein, 450 So.2d 262, 264 (Fla. 5th DCA 1984)(lost profit damages must be based on net profits); E.T. Legg & Associates, Ltd. v. Shamrock Auto Rentals, Inc., 386 So.2d 1273, 1274 (Fla. 3d DCA 1980)(where evidence only pertains to gross receipts or fails to account for expenses lost profits award will be reversed); Ed Skoda Ford, Inc. v. P & P Paint & Body Shop, Inc., 277 So.2d 818, 819 (Fla. 3d DCA 1973) cert. den. 284 So.2d 395 (Fla.1973)(officers' salaries must be accounted for on corporation's income statement, thereby reducing calculation of annual profit).
Whether, as King Shoes' argues, the compensation of its owner/officer included corporate proceeds that were paid as salary for "tax planning" reasons is of no moment. "[T]he officers of the plaintiff corporation cannot avail themselves of the corporate shield when it suits their purpose and discard the same when it does not appear advantageous." Ed Skoda Ford, supra, 277 So.2d at 819.[4]
In addition to improperly using gross profit figures, an error which permeated and invalidated all other conclusions of King Shoes' expert, the damages claimed were highly speculative and conjectural. King Shoes' expert testified that the business "had a positive trend" based on a 25% increase in sales from 1996 to 1997 and the purported 35% increase in profits for the same time period. Using this small slice of time to define the trend for the entire six and a half year remainder of the lease term, the expert projected that, but for the fire, the profitability of the business would have continued to escalate dramatically. Based upon 1997's perceived 35% increase in profits, an increase in profits of an additional 35% was projected for 1998. Then an additional 10% increase in profits beyond that was projected for 1999, and then, the business having "stabilized," increasing profits at the rate of 3% per year, to account for inflation, were projected through mid-2004.
In W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348, 1350-51 (Fla.1989), the guidelines for the recovery of lost prospective profits were succinctly stated:
The two seminal Florida cases on recovery of prospective profits are Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936), and New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co., 122 Fla. 718, 166 So. 856 (1935). In New Amsterdam this Court held that prospective business profits are generally too speculative and dependent on changing circumstances to be recovered. New Amsterdam provided an exception allowing the plaintiff to show the amount of his loss by competent proof. However, *1128 this exception only applied to the interruption of an established business. Twyman, on the other hand, did not limit recovery to established businesses. There, the Court stated that, if there is a "yardstick" by which prospective profits can be measured, they will be allowed if proven. 123 Fla. at 6, 166 So. at 217. The Court provided further that the "uncertainty which defeats recovery in such cases" is the cause of the damage rather than the amount. "If from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty a satisfies the mind of a prudent and impartial person." Id. at 7-8, 166 So. at 218. See also Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA), cert. denied, 322 So.2d 913 (Fla.1975).
We follow the holding in Twyman. A business can recover lost prospective profits regardless of whether it is established or has any "track record." The party must prove that 1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined. (emphasis added).
On remand, to recover for lost profits, King Shoes must "provide competent evidence sufficient to satisfy the mind of a prudent impartial person as to the amount of profits lost as a result" of the fire. North Dade Community Development Corp. v. Dinner's Place, Inc., 827 So.2d 352 (Fla. 3d DCA 2002). Any "yardstick" used to show the amount of profits must be reasonable, and the loss of the profits as a result of the fire must be reasonably certain. Halliburton Co. v. Eastern Cement Corp., 672 So.2d 844 (Fla. 4th DCA 1996). Lost profits must be established with a reasonable degree of certainty and must be a natural consequence of the wrong. Brevard County Fair Ass'n, Inc. v. Cocoa Expo, Inc., 832 So.2d 147 (Fla. 5th DCA 2002); Schonfeld v. Albert Alpert & Sons, Ltd., 427 So.2d 1035 (Fla. 3d DCA 1983); Beverage Canners v. Cott Corp., 372 So.2d 954 (Fla. 3d DCA 1979). Such an award cannot be based upon speculation or conjecture. Stensby v. Effjohn Oy Ab, 806 So.2d 542 (Fla. 3d DCA 2001); Shadow Lakes, Inc. v. Cudlipp Const. and Development Co., Inc., 658 So.2d 116 (Fla. 2d DCA 1995); Himes v. Brown & Co. Securities Corp., 518 So.2d 937 (Fla. 3d DCA 1988).
The term of the parties' lease does not define the duration of lost profit damages incurred as a result of the fire. To repeat, the loss of profits must be shown with reasonable certainty, and the mere existence of a leasehold interest for six and half years following the fire does not establish that profits would have been realized for that entire time. In light of the fact that King Shoes closed at a nearby location two years after the fire,[5] and given its modest and sporadic pre-fire profits, an award of lost profits for the entire remaining six and half years of the lease term is too remote and speculative to satisfy the reasonable certainty requirement as to causation required by Wharfside, supra, and its progeny.[6]

*1129 The fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the with the loss sustained in consequence of the defendant's act which gave rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained.
Hanna v. Martin, 49 So.2d 585 (Fla.1950). See also Pahokee Housing Authority, Inc. v. South Florida Sanitation, Co., 478 So.2d 1107, 1108 (Fla. 4th DCA 1985) (lost profit award must be commensurate with what is fair and just and limited to actual damages sustained). In short, this fire was not the purchase of a winning lottery ticket for King Shoes, and any lost profits award must be limited to the actual damages sustained.
Affirmed in part, reversed in part, and remanded for a new trial as to damages only.[7]
NOTES
[1] We reverse only the lost profits portion of the damage award and do not disturb the jury verdict as to damages for inventory and fixtures lost in the fire.
[2] King Shoes introduced evidence (in connection with liability issues) that the building was in an area that, as of 1998, was a high crime area, was deserted and dangerous at night, and that all store owners in the area installed shutters, iron bars, accordion gates or alarm systems.
[3] For example, in 1996 King Shoes' tax return showed a net loss of $1,513, and its expenses included compensation of officers in the amount of $81,180. In 1997, King Shoes' tax return showed a net profit of $31,762, and its expenses included compensation of officers in the amount of $76,000. However, King Shoes' accountant used so-called "net profit" figures (which were actually gross profits) of $79,667 for 1996 and $107,762 for 1997 as the baseline for predicting future lost profits.
[4] King Shoes' further suggestion that its election of S corporation status as of 1998 somehow avoids the applicability of Kaminester, supra, is incorrect. First, all of King Shoes' pre-fire tax returns, which reflected officer compensation, were filed as a standard Florida corporation, and any net profits analysis must deduct such officer compensation. Second, the mere fact that an S corporation passes through income to its owner for taxation purposes would not alter the necessity to deduct the reasonable value of the owner/officer's salary for the services provided in determining the actual net profits of the corporation. Network Publications, Inc. v. Bjorkman, 756 So.2d 1028, 1034 (Fla. 5th DCA 2000)(Harris, J. concurring in part, and dissenting in part, with opinion). See also Trailer Ranch, Inc. v. Levine, 523 So.2d 629, 631 (Fla. 4th DCA 1988)(S corporation's payment of dividend via pass-through income does not necessarily mathematically relate to the amount of real profit the business made during the year).
[5] The trial court should further consider whether King Shoes properly mitigated its damages. Zinn v. GJPS Lukas, Inc., 695 So.2d 499, 501 (Fla. 5th DCA 1997)(where business suffers from act of negligence, the amount of lost profits recoverable will depend, in part, upon whether the plaintiff discharged their duty to mitigate their damages).
[6] King Shoes seeks to recover damages for its net profits lost as a proximate result of the fire, not damages for the destruction of its business. If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of loss. Polyglycoat Corp. v. Hirsch Distributors, Inc., 442 So.2d 958 (Fla. 4th DCA 1983). Where, as here, a business continues after suffering from an act of negligence the business is entitled to recover the lost profits attributable to defendant's negligent act, but cannot recover both lost profits, and the market value of the business. Aetna Life & Casualty Co. v. Little, 384 So.2d 213 (Fla. 4th DCA 1980).
[7] Although, as a result of our disposition of the main appeal it is unnecessary to address the issues raised on cross-appeal, we agree with King Shoes that, if lost profits prior to the date of judgment are appropriately proven, prejudgment interest on such amounts is recoverable. Argonaut Ins. Co. v. May Plumbing, Co., 474 So.2d 212 (Fla.1985); Ulano v. Anderson, 703 So.2d 1149 (Fla. 3d DCA 1998); Indian River Colony Club, Inc. v. Schopke Const. & Engineering, Inc., 619 So.2d 6 (Fla. 5th DCA 1993); Pilkington PLC v. Metro Corp., 562 So.2d 709 (Fla. 3d DCA 1990).