592 So.2d 1185 (1992)
INDIAN RIVER COLONY CLUB, INC., Appellant,
v.
SCHOPKE CONSTRUCTION & ENGINEERING, INC., Appellee.
No. 91-499.
District Court of Appeal of Florida, Fifth District.
January 17, 1992.
Elting Storms and David A. Baker of Foley & Lardner, Orlando, for appellant.
Tom G. Burrows of Burrows & Jester, P.A., Merritt Island, for appellee.
DIAMANTIS, Judge.
Appellant Indian River Colony Club, Inc. (IRCC) appeals the award of damages in favor of appellee Schopke Construction & Engineering, Inc. (Schopke) in a breach of contract action. We reverse and remand this cause to the trial court for proceedings consistent with this opinion.
*1186 IRCC was the planner and developer of a residential community for which Schopke was the project manager pursuant to a construction management contract executed between IRCC and Schopke on May 15, 1987. The contract provided that Schopke would be compensated a fixed base amount of $350,000, payable at $10,000 per month for 35 months for preconstruction and construction services. The contract also contained the following provisions regarding termination of the agreement:
10.1 This Agreement may be terminated by either party upon seven days written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination.
10.2 This Agreement may be terminated by the Owner upon at least fourteen days written notice to the Construction Manager in the event that the Project is permanently abandoned.
10.3 In the event of termination not the fault of the Construction Manager, the Construction Manager shall be compensated for all services performed to the termination date, together with Reimbursable Costs then due and all Termination Expenses.
10.4 Termination Expenses are defined as Reimbursable Costs directly attributable to termination for which the Construction Manager is not otherwise compensated.
On August 31, 1988 IRCC sent a letter to Schopke terminating the construction management contract effective September 15, 1988 citing Schopke's poor and inadequate performance as the reason for termination. Schopke was paid the base compensation of $10,000 per month for 11 1/2 months (from October 1987[1] through September 15, 1988), for a total of $115,000. Schopke was paid all reimbursable expenses which it billed. At the time the contract was terminated, 78 of the 280 acres in the development had been completed.
Schopke filed suit against IRCC for damages alleging breach of contract. IRCC counterclaimed for damages also alleging breach of contract. The trial court found IRCC's termination of the contract constituted a breach and denied IRCC relief on its counterclaim. The court awarded Schopke $235,000, which represented the entire fixed amount of the contract less the amount already paid ($350,000 less $115,000 = $235,000), plus prejudgment interest. IRCC appeals this award arguing that the trial court erred when it awarded the entire balance owing on the contract. IRCC principally claims that the termination provision of the contract controlled the amount of Schopke's damages. Alternatively, IRCC contends that the trial court should have only awarded Schopke its lost profits.
Where the parties to a contract have agreed to the consequences of a breach, their agreement will control provided the remedy is "mutual, unequivocal and reasonable." Design Time, Inc. v. Monco of Orlando, Inc., 518 So.2d 454, 456 (Fla. 5th DCA) rev. denied, 525 So.2d 879 (Fla. 1988); Hatcher v. Panama City Nursing Center, Inc., 461 So.2d 288, 290 (Fla. 1st DCA 1985). In the instant case, paragraph 10.3 of the contract specifies the compensation to be paid to Schopke in the event of termination not the fault of Schopke. However, the August 31 letter from IRCC terminating the contract indicates that Schopke was terminated for its poor and inadequate performance; therefore, paragraph 10.3 is inapplicable in this case.[2] *1187 The trial court found Schopke was substantially performing on the contract at the time of termination and that the termination was wrongful and constituted a breach of the contract. We agree. Gunter Hotel of San Antonio, Inc. v. Buck, 775 S.W.2d 689, 697 (Tex. App. 1989).
Because IRCC breached the construction management contract, Schopke is entitled to recover the amount of profit it would have earned during the remainder of the term of the contract had there been no breach. Physicians Reference Laboratory, Inc. v. Daniel Seckinger, M.D. and Associates, P.A., 501 So.2d 107, 108 (Fla. 3d DCA 1987); Golf & Racquet Club of Palm Beach, Inc. v. Campbell-Dickey Advertising, Inc., 259 So.2d 192, 193 (Fla. 4th DCA 1972); Ballard v. Krause, 248 So.2d 233, 234 (Fla. 4th DCA 1971). The burden of establishing profit as if there had been no breach of the contract is on Schopke. Ballard, 248 So.2d at 234. Damages cannot be based purely and simply upon the entire balance of the contract price to which Schopke would have been entitled upon full performance. Golf & Racquet Club, 259 So.2d at 193. In order to prove its prospective lost profits, Schopke must show its total costs and expenses necessary to perform the contract and then deduct that sum from the balance owing on the contract price. Physicians Reference Laboratory, 501 So.2d at 109; Ballard, 248 So.2d at 234.
In arriving at its deductible expenses and costs to determine lost profits, Schopke must deduct the actual supervisory salary paid or, if no salary is paid, the reasonable value of the supervisory services that would have been attributable to performing the contract. Southern Bell Telephone and Telegraph Company v. Kaminester, 400 So.2d 804, 807 (Fla. 3d DCA 1981). See also Ad-Advantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1351-52 (11th Cir.1987), on appeal after remand, 943 F.2d 1511 (11th Cir.1991). Additionally, Schopke must also deduct any other operating expenses and costs, such as its home office expenses and overhead, which were not reimbursable. Physicians Reference Laboratory, 501 So.2d at 109; American Motorcycle Institute, Inc. v. Mitchell, 380 So.2d 452, 453 (Fla. 5th DCA 1980); Ballard, 248 So.2d at 234.
In the instant case, Schopke presented evidence only as to the balance owed under the contract (which constituted evidence of gross income) and omitted evidence as to the amount of costs and expenses necessary to perform the contract, even though such expenses clearly existed. Schopke admitted that the $350,000 fixed base amount was not all profit and that all services required by the contract had not yet been performed to complete the job. Schopke testified that he worked an average of 3 1/2 hours per day as construction manager for IRCC until September 15, 1988, the date of termination, and valued this supervisory time at $125 per hour. In addition, Schopke had continuing home office expenses and overhead which were not reimbursable under the contract.
Consequently, the omission of these deductible expenses and costs to determine lost profits requires reversal of the damages awarded by the trial court. American Motorcycle Institute, Inc. v. Mitchell, 380 So.2d at 453. Thus, we reverse the trial court's judgment and remand this case for a proper determination of damages. American Motorcycle Institute, 380 So.2d at 455. See also Physicians Reference *1188 Laboratory, 501 So.2d at 109; Southern Bell, 400 So.2d at 807; Golf and Racquet Club, 259 So.2d at 193; Ballard, 248 So.2d at 235; Ad-Advantage Telephone Directory Consultants, 849 F.2d at 1353, including n. 13.[3]
Accordingly, we reverse the trial court's judgment and remand this cause for a new trial on damages consistent with this opinion.
REVERSED and REMANDED.
GRIFFIN, J., concurs specially with opinion.
COBB, J., dissents with opinion.
GRIFFIN, Judge, concurring specially.
Appellee, Schopke Construction and Engineering, Inc. ("Schopke"), had a Construction Manager's Agreement[1] with appellant, as the owner, to provide management of the construction of an apartment complex for a fee of $350,000 plus reimbursable costs. The contract was to be performed over a period of thirty-five months with payment to be made at the rate of $10,000 per month. The owner ostensibly "terminated" this agreement after only eleven and one-half months, claiming poor performance by Schopke. It is by now undisputed, however, that Schopke was fully performing under the agreement and that the owner had no valid basis to terminate the Construction Management Agreement.
Under Article 10 of the Construction Manager's Contract entitled "Termination", there were two ways in which the contract could be terminated prior to full performance: (1) a party not at fault could terminate on seven days' notice if the other party was not performing its contractual obligations (section 10.1); or (2) the owner could terminate on fourteen days' notice if the owner made the decision to abandon the project (section 10.2). It is clear that appellant did not satisfy either of these authorized grounds to terminate the contract. An unauthorized "termination" is a breach of the contract. A party does not terminate a contract by breaching it, he breaches the contract by terminating it without the right to do so. Section 10.3 (which appellant and the dissent contend limits Schopke's damages) by its terms, does not apply to a breach of contract, it applies to a termination.
Perhaps the problem in this case lies in the current usage of the word "termination". Termination is a term having specific legal significance in contract law and is well described in the Uniform Commercial Code as:
[that which] occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On `termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.[2]
*1189 § 672.2-106(3), Fla. Stat. (1989). In this case, the owner purported to terminate the contract but did not meet the requirements to do so and, instead, merely breached it. When a contract is breached it does not terminate; it continues to exist. See generally 11 S. Williston, A Treatise on the Law of Contracts §§ 1305-1308 (3rd ed. 1968). As Williston points out, this is a source of "serious confusion". Id. at § 1305. What actually occurs is that the innocent party is entitled to treat his obligations under the existing contract as discharged and sue for the damages occasioned by the breach.
Appellant incorrectly labels the breach that occurred in this case as a "termination" and, accordingly contends that section 10.3 limits the construction manager's damages for the owner's breach of contract so that he cannot recover the benefit of his bargain. To begin with, section 10.3 is manifestly not a damages limitation clause  it has no words of limitation. Rather, 10.3 confers a right on the construction manager who, through no fault of his own, is adversely affected by the owner. In the event of an authorized termination, he is entitled to expenses associated with that termination. Even if section 10.3 were applicable to the "termination" in this case, section 10.3 only identifies certain monies that are recoverable by Schopke. It does not say that other damages available by law are not recoverable. To conclude that section 10.3 deprives the construction manager of his breach of contract damages remedy in favor of termination expenses makes no sense. The intent of this provision is to provide a remedy to a non-defaulting construction manager, not deprive him of a remedy for the owner's breach.
Nationwide we have been able to find only one other case that has dealt with a similar issue. In Gunter Hotel of San Antonio Inc. v. Buck, 775 S.W.2d 689 (Tex. Ct. App. 1989), the Texas Court of Appeals was offered the same interpretation of a parallel provision contained in the standard AIA Owner/Architect Agreement ("AIA document B141"). That court likewise rejected the argument that the relevant language limits damages for breach of contract.
As to the issue of proof of damages  at trial, the owner principally contended that Schopke had failed to perform under the agreement, thus a termination by the owner under section 10.1 was proper. Alternatively, the owner argued that, even if the termination were improper, section 10.3 limited Schopke to monies already earned under the contract and reimbursable costs connected with the termination. As I read the record in this case, the measure of damages and the sufficiency of proof of lost profits was never a feature of this trial. The question of the proper measure of damages and adequacy of proof was never raised by appellant until its amended motion for rehearing. The testimony on damages, accordingly, is scant, but there was some evidence adduced by Schopke that the court could have used (but did not use) to more correctly calculate damages. In my mind, it is a close question whether Schopke's testimony was legally insufficient to support a damage award of the entire contract balance as lost profits. While I agree in general with Judge Cobb in his dissent that a plaintiff should not get two opportunities to prove its damages, given the issues as framed and tried by the parties, the case law cited in the majority opinion and the trial court's decision to award the entire contract balance, I believe a remand for ascertainment of the correct amount of Schopke's lost profits is possible and appropriate in this case.
COBB, Judge, dissenting.
Paragraph 10.3 of Article 10 of the Construction Management Contract between the parties to this appeal contains an express provision regarding termination of the agreement. The result of this case turns on the proper interpretation of that provision, which reads:
In the event of termination not the fault of the Construction Manager, the Construction Manager shall be compensated for all services performed to the termination date together with Reimbursable *1190 Costs then due and all Termination Expenses.
As I read the plain language of the foregoing provision, a wrongful termination of the contract by the IRCC is a "termination not the fault of the Construction Manager." See 11 Fla.Jur.2d Contracts § 164 (maintaining an action for damages "terminates" the contract for purposes of further performance). The manager, Schopke Construction & Engineering, Inc., therefore would be entitled, under the contract, to compensation for the value of its managerial services for the 11 1/2-month period it performed those services.[1] If the value of Schopke's services was greater than the $115,000 it was paid in increments for the period it performed, then the burden at trial to present evidence of that greater value was on Schopke, a burden it failed to carry. Schopke is not entitled to a second bite at the same apple. See Florida Ventilated Awning Co. v. Dickson, 67 So.2d 215 (Fla. 1953); Van Der Noord v. Katz, 481 So.2d 1228 (Fla. 5th DCA 1985).
The contract in the instant case simply does not provide for damages for lost profits to Schopke in the event of a wrongful termination (i.e., breach) by IRCC. Even if it did, Schopke did not present the requisite proof to properly establish that loss; that burden of proof also would have been on Schopke at trial.
The majority and concurring opinions appear to be at odds with each other on the question of whether a "termination" actually occurred. In fact, neither party to this appeal disputes that there was a wrongful termination of the contract by the developer, IRCC. Indeed, Schopke expressly acknowledges in its brief that the contract was terminated by the notice from IRCC, a termination it characterizes as "wrongful." Neither IRCC nor Schopke contends, as does the concurring opinion, that the phrase "termination of contract," as used by the parties, excludes a wrongful termination of the contract.
I would reverse and remand for entry of judgment for the appellant, Indian River Colony Club, Inc., on Schopke's claim.
NOTES
[1] The first draw to pay the various entities performing construction work became available around October of 1987.
[2] See Gunter Hotel of San Antonio, Inc. v. Buck, 775 S.W.2d 689, 697 (Tex. App. 1989). IRCC is "bound by the substance" of its termination notice that Schopke was terminated for its alleged failure substantially to perform in accordance with the terms of the agreement. Gunter Hotel at 697. In Gunter Hotel, a contract between an owner and an architect provided that the agreement may be terminated upon at least seven days written notice to the architect and that the architect shall be compensated for all services performed to the termination date. The contract then provided that in the event the architect is terminated because of the architect's failure to perform in accordance with the agreement's terms, the architect shall not be entitled to receive any compensation for services rendered during the phase in which such termination occurred. In essence, these two provisions of the contract involved in Gunter Hotel are similar in effect to paragraph 10.3 of the contract in the instant case. The contract in Gunter Hotel also provided that either party could terminate the contract should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination or in the event that the project is permanently abandoned. These two latter provisions are comparable to paragraphs 10.1 and 10.2 of the contract involved in the case at bar. The court in Gunter Hotel properly concluded that the owner (the hotel) did not have an absolute right of termination, but rather, had a right of termination upon condition, namely: upon failure of the other party to substantially perform through no fault of the party initiating the termination or in the event the project is permanently abandoned.
[3] The cases relied upon by the dissent for an outright reversal do not deal with the issue of lost profits. Florida Ventilated Awning Co. v. Dickson, 67 So.2d 215 (Fla. 1953) involved a suit for infringement of the plaintiff's trade name and the court affirmed the trial court's finding that the plaintiff failed to prove any definite loss and that any sum awarded would be based on pure speculation. Similarly, Van Der Noord v. Katz, 481 So.2d 1228 (Fla. 5th DCA 1985) involved a buyer's claim in a breach of contract case for out-of-pocket expenses. In Van Der Noord, this court reversed the trial court's order setting aside a jury verdict in favor of the seller and ordering a new trial, holding that the evidence of loss of out-of-pocket expenses was based solely on speculation. In the instant case Schopke proved the gross amount of its profits but did not prove its deductible operating expenses and costs. Thus, Schopke did not fail to prove it was damaged at all, but instead, its evidence was not sufficient to justify the amount of damages awarded by the trial court.
[1] AIA Document B801, 1980 Edition, "Standard Form of Agreement Between Owner and Construction Manager."
[2] Note, also, the difference between a "termination" and a "cancellation", which is defined as occurring when either party puts an end to the contract for breach by the other. The effect is the same as the "termination" except that the cancelling party also retains any remedy for the breach of the whole contract or any unperformed balance. § 672.2-106(4), Fla. Stat. (1989).
[1] Gunter Hotel of San Antonio, Inc. v. Buck, 775 S.W.2d 689 (Tex. Ct. App. 1989), cited by the concurring and majority opinions, is not in conflict with the above position since different contract language was utilized. As interpreted by that court, none of the clauses actually applied while, here, 10.3 does apply to the facts. The Gunter court also rewrote the contract by taking language indicating there was an absolute right to termination with proper notification and changing this to a right of termination upon two conditions.