766 So.2d 427 (2000)
Robert W. COLEMAN, Appellant/Cross-Appellee,
v.
B.R. CHAMBERLAIN & SONS, INC., Appellee/Cross-Appellant.
No. 5D99-3307.
District Court of Appeal of Florida, Fifth District.
August 25, 2000.
Rehearing Denied September 22, 2000.
*428 Kelton Ferris, Orlando, and Theodore D. Estes, of Divine & Estes, P.A., Orlando, for Appellant/Cross-Appellee.
David H. Simmons and Patrick C. Howell of Drage, DeBeaubien, Knight, Simmons, Mantzaris & Neal, P.A., Orlando, for Appellee/Cross-Appellant.
PLEUS, J.
Robert Coleman worked for B.R. Chamberlain & Sons selling financial services pursuant to a written employment agreement between the two which included nondisclosure/non-compete covenants. After Coleman left the company to work for a competitor, Chamberlain sought injunctive relief under the terms of the employment agreement. It also sought damages from Coleman for doing business with clients of Chamberlain. At trial, Chamberlain argued it was entitled to damages based on a formula of 200% of one year's gross revenues generated by each client. Coleman took the position that the agreement had expired and that the covenant requiring him to pay 200% of one year's gross revenues was an unenforceable penalty.
After a bench trial, the trial judge found zero damages for Chamberlain, but ruled the agreement was enforceable for two years after the expiration date. He also found that the damages formula advanced by Chamberlain was not a penalty. Because we agree with Coleman that the provision in the agreement regarding a payment of 200% of one year's gross revenue generated by a former client of Chamberlain is an unenforceable penalty, we reverse.
The pertinent portions of the employment agreement provide:
6. TERMINATION: This agreement may be terminated by either party upon thirty (30) days written notice to the other party.... Following termination of this agreement, should Employee elect to work in a similar capacity for another firm, or in business for himself, and any clients wish to discontinue their relationships with the Company for the purpose of working with the Employee, the Employee agrees that for a period of two (2) years following termination of this agreement, the Employee and the client must inform B.R. CHAMBERLAIN & SON'S, [sic] INC. in writing of such intent. During that two (2) year period Employee agrees that he will not provide services to any such client without first compensating B.R. CHABERLAIN & SON'S [sic] for the value of that client's relationship, based on the *429 size of the account and its projected revenue. Such value will be determined by the Certified Public Accountant ("CPA") employed by B.R. Chamberlain & Sons. Immediately upon tender of the value of the client relationship to B.R. Chamberlain & Sons by Employee (or within five (5) business days thereafter), the Company shall transfer client records to Employee.
Although the calculation of the payment by Coleman to Chamberlain is not specified in the employment agreement, a CPA employed by Chamberlain testified that Coleman was obligated to pay Chamberlain 200% of one year's gross revenue for each client of Chamberlain who switched to Coleman's new company.
The trial judge approved the formula for calculation but refused to award damages because the CPA did not determine independently the figures from which to begin in making the valuations, i.e., the one year's gross revenue from the former client, and did nothing to investigate or corroborate the figures used.
The trial judge, in his "Memorandum of Ruling," which he incorporated into the Final Judgment, makes the following ruling:
This is a very serious problem, because the method and measure of damages used by Mr. Chamberlain are quite severe, and even Mr. Chamberlain described them as a "penalty." This court is not holding them to be a "penalty" such that they are unenforceable.
A proper ruling would have been for the trial judge to hold that the method and measure of damages suggested by Chamberlain was a penalty and unenforceable. Enforcement of the penalty unfairly deprives Coleman of the right to pursue his profession and deprives his clients of their right to retain the financial advisor of their choice.
The construction of a written agreement and the legal effect of the agreement involve issues of law. Cox v. CSX Intermodal, Inc., 732 So.2d 1092 (Fla. 1st DCA 1999). An appellate court may independently assess the meaning of a covenant not to compete and may reassess the meaning of the agreement to reach a different conclusion from that of the trial court. See Emergency Associates of Tampa, P.A. v. Sassano, 664 So.2d 1000 (Fla. 2d DCA 1995) and cases cited therein.
Penalty provisions disguised as liquidated damages provisions have long been found to be unenforceable in Florida. Hyman v. Cohen, 73 So.2d 393, 399 (Fla. 1954). In Hyman, the supreme court also stated that "in doubtful cases, the tendency of the courts is to construe a provision for the payment of an arbitrary sum upon a breach of a contract as a provision for a penalty...." Id. at 402.
Chamberlain argues that the payment requirement is a liquidated damages provision because "the actual damages were impossible to ascertain at the time the Employment Agreement was entered into." Assuming, arguendo, that the penalty clause is a liquidated damages provision (the clause merely provides that Chamberlain's CPA is to determine the value of the client relationships), the impossibility of ascertaining actual damages when a contract is entered into is only the first step in determining the validity of a liquidated damages provision. The Florida Supreme Court has stated that a liquidated damages clause may stand if "damages are not readily ascertainable at the time the contract is drawn, but ... [equity may] relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach." Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972).
Florida courts will not enforce a penalty which is "disproportionate to the damages" and "is agreed upon in order to enforce performance" of a contract and "held in terrorem over the promisor to deter him from breaking his promise." Crosby Forrest Products, Inc. v. Byers, 623 So.2d 565, *430 567 (Fla. 5th DCA 1993) (citing 5 Williston on Contracts § 776 at 668).
In this case, the president of Chamberlain admitted that the purpose of the payment provision was to discourage former employees from taking customers and to penalize them if they did. The payment requirement, as interpreted by Chamberlain, was clearly disproportionate to actual damages because Coleman was required to immediately pay the gross anticipated receipts from a client relationship, which would give Chamberlain more than the amount of its actual damages.
Chamberlain further argues that even if the payment provision is a penalty, it is entitled to recoup its actual damages from Coleman. This would be true only if Chamberlain had proven its actual damages at trial. Stenor, Inc. v. Lester, 58 So.2d 673 (Fla.1951); Secrist v. National Service Industries, Inc., 395 So.2d 1280 (Fla. 2d DCA 1981). At trial, Chamberlain presented only gross revenues no matter when the client came to Coleman. Damages would be based on net, rather than gross, and would have occurred only during the period Coleman was in breach of the agreement rather than a set two-year period. Chamberlain never argued for actual damages, never presented any evidence as to actual damages, and at this point in the judicial process, is not entitled to actual damages for the value of the client relationships as to those clients who were used in the erroneous computation of the damages at trial.
By holding the method of calculation to be a penalty and unenforceable, we do not need to address the other issue raised by this appeal as to whether the restrictive covenant did or did not survive the termination of the employment agreement. We note, however, that the agreement in question does not expressly provide that its terms would continue after the contract's expiration if the employee continued to work without renewing the contract nor does it expressly provide that the noncompete clause would continue in effect following the expiration of the employment. See Sanz v. R.T. Aerospace Corp., 650 So.2d 1057 (Fla. 3d DCA 1995); Brenner v. Barco Chemicals Division, Inc., 209 So.2d 277 (Fla. 3d DCA 1968).
We hereby remand this case to the trial court for entry of a final judgment in favor of Coleman.
REVERSED and REMANDED.
W. SHARP, and GRIFFIN, JJ., concur.