862 So.2d 803 (2003)
BOCA DEVELOPERS, INC., Boca Golf View Developers, Inc., Boca Golf View, Ltd., and Boca Marina, Ltd., Appellants,
v.
FINE DECORATORS, INC., Appellee.
No. 4D02-4869.
District Court of Appeal of Florida, Fourth District.
November 26, 2003.
Rehearing Denied January 26, 2004.
John H. Pelzer and Kimberly S. Rogers of Ruden, McClosky, Smith, Schuster & Russell, P.A., Ft. Lauderdale, for appellants.
*804 Lee Milich of Lee Milich, P.A., Ft. Lauderdale, for appellee.
KLEIN, J.
Fine Decorators contracted to furnish several new model apartments built by the appellant developers, some of which were on a consignment basis. In this lawsuit Fine claimed that the developers breached the contract and obtained a jury verdict awarding lost profits. We reverse for a new trial because the trial court failed to define "consignment" to the jury and also because the award of lost profits failed to consider overhead.
The contract included two units in Townsend Place and two units in Mizner Grand. It provided that Fine would "provide on consignment all loose furnishing" in Townsend Place, and would "supply one unit on consignment" in Mizner Grand. The developers agreed to purchase the furnishings in the other Mizner unit.
The first Townsend unit was sold with all of the furnishings; however, the second Townsend unit was more difficult to sell and ultimately was sold without all of the furnishings. At that point Fine and the developers were having disagreements, and no furniture was placed in the Mizner units.
Fine brought this lawsuit for breach of contract seeking lost profits on the Townsend unit which was sold unfurnished as well as the two Mizner units which were never furnished and the jury awarded damages for all three units.
The developers presented testimony that consignment meant that Fine would be paid only for that furniture which was sold along with the apartments. Fine, on the other hand, testified that the developers were obligated to purchase the furniture no matter how the apartments were sold. The developers argue that the court should have defined consignment in the jury instructions.
The instruction proposed by the developers was essentially the same as the definition of consignment in Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915, 918 (1920):
The term has a well-defined legal meaning and signifies * * * to deposit with another to be sold, disposed of or called for * * * to send goods to an agent * * * to be sold, to send or transfer goods to a merchant or factor for sale, * * * the term implies an agency and applied in a commercial sense means that the property is committed or intrusted to the consignee for care or sale, and does not by any express or fair implication mean a sale by one or purchase by another.
We conclude that the trial court erred in not defining consignment in the jury instructions, because this omission left the jury with the erroneous impression that consignment, which is not ambiguous, could mean something other than its definition under Edwards. We therefore reverse and remand for a new trial with a proper jury instruction.
The developers also argue that the trial court erred in allowing Fine to calculate its lost profits without allocating fixed overhead costs to these model apartments. Fine presented testimony that, when it calculates profits on model apartments, it does not include ordinary overhead such as salaries of employees, rent and insurance. Rather, Fine apportions all of this overhead to other decorating jobs for which Fine charges more than it does when furnishing models. Fine admits that these models were decorated by its employees, and that fixed costs such as rent and insurance related to those employees. Fine's explanation is that, because it does a large *805 volume of business, it reaches a point where taking on additional projects does not increase its fixed costs. It had reached that point when it worked on these models.
Assuming that what Fine says is true, it does not follow that fixed costs should be allocated only to decorating jobs up to a certain point, and not to jobs undertaken thereafter. If Fine decorates 100 units a year, and its fixed costs do not increase after the first fifty, it does not follow that Fine can recover greater lost profits for the seventy-fifth unit than the twenty-fifth unit. Our case law requires that these expenses be allocated across the board.
In Indian River Colony Club, Inc. v. Schopke Construction & Engineering, Inc., 592 So.2d 1185 (Fla. 5th DCA 1992), the court explained:
In order to prove its prospective lost profits, Schopke must show its total costs and expenses necessary to perform the contract and then deduct that sum from the balance owing on the contract price.
In arriving at its deductible expenses and costs to determine lost profits, Schopke must deduct the actual supervisory salary paid or, if no salary is paid, the reasonable value of the supervisory services that would have been attributable to performing the contract. Additionally, Schopke must also deduct any other operating expenses and costs, such as its home office expenses and overhead, which were not reimbursable.
Id. at 1187 (citations omitted).
This court has applied that principle in Fu Sheng Industrial Co. v. T/F Systems, Inc., 690 So.2d 617, 623 (Fla. 4th DCA 1997) ("[T]rial court should have required an accounting for all costs associated with the selling" of the product for which lost profits were claimed.); Ballard v. Krause, 248 So.2d 233, 234 (Fla. 4th DCA 1971) ("Profit may be established by showing the total cost and expenses of labor, services and materials necessary to perform the contract and then deducting that sum from the contract price."); Physicians Reference Lab., Inc. v. Daniel Seckinger, M.D. & Assocs., P.A., 501 So.2d 107 (Fla. 3d DCA 1987) (All fixed and variable costs must be deducted from proceeds in determining lost profits).
As support for its argument that it can allocate its fixed overhead entirely to private decorating jobs, thus artificially increasing its profit on model apartments, Fine relies entirely on Knight Energy Services, Inc. v. C.R. International Enterprises, Inc., 616 So.2d 1079, 1080 (Fla. 4th DCA 1993). In Knight, however, "Plaintiff testified unequivocally that there were no deductible costs or expenses necessary to fully perform this contract." Unlike in Knight, there was no testimony in the present case that the fixed costs, such as salaries of employees, were not involved in furnishing these models. This case is thus distinguishable from Knight.
This is not to say that a party seeking lost profits is precluded from proving that some endeavors are more profitable than others, because, for example, they are less labor intensive. Fine, however, did not have that type of proof. In the absence of such, our case law requires that overhead be deducted.
The developers argue that, because Fine did not properly prove lost profits, they should have been granted a directed verdict. It appears from the record, however, that if the judge had correctly ruled that overhead had to be deducted, Fine would have been able to establish the amount of that overhead. Although Fine may not be able to prove that it would have made a profit under those circumstances, as the evidence shows that furnishing model *806 apartments is done primarily in the hopes of attracting more lucrative business, Fine should be given the opportunity to do so. We therefore reverse and remand for a new trial on all issues.
STONE and HAZOURI, JJ., concur.