995 So.2d 588 (2008)
RKR MOTORS, INC., a Florida corporation, d/b/a Autohaus of Pompano, Appellant/Cross-Appellee,
v.
ASSOCIATED UNIFORM RENTAL & LINEN SUPPLY, INC., a Florida corporation, Appellee/Cross-Appellant.
No. 3D05-2130.
District Court of Appeal of Florida, Third District.
November 12, 2008.
Rehearing Denied December 23, 2008.
*589 Hodgson Russ and Richard A. Goetz, Boca Raton, for appellant/cross-appellee.
Boies, Schiller & Flexner and Bruce A. Weil, Miami, for appellee/cross-appellant.
Before GERSTEN, C.J., and SUAREZ and ROTHENBERG, JJ.

On Motion for Rehearing
ROTHENBERG, J.
We grant the appellant/cross-appellee's motion for rehearing, withdraw our former opinion dated October 25, 2006, and substitute the following opinion in its stead.
RKR Motors, Inc., d/b/a Autohaus of Pompano ("RKR Motors"), appeals a final judgment awarding Associated Uniform Rental & Linen Supply, Inc. ("Associated Uniform") $82,444 in lost profits. Associated Uniform cross-appeals claiming that the trial court should have awarded it liquidated damages in the amount of $102,309. For the reasons that follow, we reverse the trial court's final judgment awarding Associated Uniform $82,444 in lost profits and remand for entry of a final judgment in favor of Associated Uniform in the amount of $10,437.

*590 FACTS

RKR Motors and Associated Uniform entered into three contracts in which Associated Uniform agreed to rent and launder uniforms to be used by RKR Motors' employees. After RKR Motors terminated the contracts, Associated Uniform filed a multi-count complaint against RKR Motors, which included a count for breach of contract. Specifically, the breach of contract count asserted, "Pursuant to the terms of the Contract between the parties, Plaintiff is entitled to liquidated damages in the sum of $110,076.48 which is due, as well as compensatory damages and/or lost profits in the event liquidated damages are deemed unrecoverable." The contract that the parties entered into provides in relevant part as follows:
The customer [RKR Motors] acknowledges that the Company [Associated Uniform] has made an investment in the garments, and in the event of cancellation of the Service Agreement by the customer prior to termination date, or in the event of cancellation of this Service Agreement, by the Company as a result of customer's breach of any term of this agreement, the customer shall pay, liquidated damages and not as a penalty the greater of: 75% of the average weekly service charge on the account per week multiplied by the unexpired weeks remaining in the agreement together with all the accrued service charges remaining or the purchase price of the garments in inventory at the rates listed above as replacement values together with all accrued service charges then outstanding.
RKR Motors filed its answer and affirmative defenses, asserting that the liquidated damages clause is "unreasonable," a "penalty," and "unconscionable on its face" because the liquidated damages clause permits Associated Uniform "to receive 75% of the total gross payment of the contracts, while providing no services."
Approximately one week prior to the commencement of the bench trial, RKR Motors admitted liability by conceding that it had breached the contracts. Thus, the only issues that remained to be determined by the trial court pertained to the amount and type of damages to award Associated Uniform. Both parties agree that Associated Uniform is entitled to liquidated damages in the approximate amount of $102,000,[1] unless a computation of Associated Uniform's lost profits reflects an amount which is disproportionate to the liquidated damages amount. See Lefemine v. Baron, 573 So.2d 326, 328 (Fla.1991).
At the bench trial, the parties disagreed as to the amount of lost profits sustained by Associated Uniform as a result of RKR Motors' breach of the contracts, and therefore, each party presented expert testimony on that issue. Associated Uniform's expert calculated the lost profits at $82,444, whereas RKR Motors' expert calculated Associated Uniform's lost profits at $10,437. The difference in the lost profits calculations was due to the methodology used by each expert. In addition, Associated Uniform introduced its income statements which indicated that its average net profits for a three year period was 8% of its average total revenue.
Both experts agreed that in order to calculate Associated Uniform's actual lost profits due to RKR Motors' breach of the contracts, Associated Uniform's expenses must be subtracted from its projected revenue. The experts, however, disagreed on the expenses which must be considered in *591 this computation. Associated Uniform's expert subtracted only those expenses that he believed would be saved as a result of not having to fulfill the contracts, but did not subtract any of Associated Uniform's fixed expenses, such as administrative expenses. On the other hand, RKR Motors' expert subtracted a portion of all of Associated Uniform's expenses, based on his opinion that all of the expenses were involved with rendering services to RKR Motors.
The trial court agreed with Associated Uniform's expert, finding that his valuation was correct because it only took into account the amount of extra overhead that Associated Uniform incurred in order to service RKR Motors' contracts, over and above what it would have expended without servicing RKR Motors' contracts.[2] Accordingly, the trial court found that Associated Uniform suffered $82,444 in actual lost profits. Finally, although the trial court concluded that the liquidated damages amount was not disproportionate to Associated Uniform's actual lost profits, the trial court awarded Associated Uniform lost profits, not liquidated damages, in the amount of $82,444 finding, "the Court believes that it would be in the best interest of equity and elects to award Plaintiff its actual lost profits as a result of Defendant's breach of the contracts." This appeal followed.

ISSUES ON APPEAL AND CROSS-APPEAL
On appeal, RKR Motors challenges the amount of lost profits awarded to Associated Uniform, arguing that the methodology used by the trial court to calculate lost profits was legally incorrect. On cross-appeal, Associated Uniform asserts that the trial court erred by not awarding damages pursuant to the liquidated damages provisions in the contract as it found that the liquidated damages amount was not disproportionate to Associated Uniform's actual lost profits.

STANDARD OF REVIEW
The trial court's determination as to the proper methodology to be used in Florida to calculate lost profits due to a breach of contract is strictly a legal issue. Thus, our standard of review is de novo. See State Dep't of Transp. v. Manoli, 645 So.2d 1093 (Fla. 4th DCA 1994) (finding that the expert's calculation of lost profits was based on a misconception of the law where the expert's methodology did not include a deduction of the owner's salary); see also State v. O'Daniels, 911 So.2d 247, 251 (Fla. 3d DCA 2005) ("We review the trial court's conclusions of law and application of the law to the facts de novo."); Anthony v. Gary J. Rotella & Assocs., P.A., 906 So.2d 1205, 1207 (Fla. 4th DCA 2005) ("The standard of review of a trial court's application and interpretation of *592 Florida law is de novo."); Sostchin v. Doll Enters., Inc., 847 So.2d 1123, 1126 (Fla. 3d DCA 2003) (finding that a calculation of lost profits which did not take officer's compensation into account as part of a corporation's expenses, but instead was based on gross profits, was inadequate as a matter of law).

THE APPEAL
In calculating Associated Uniform's lost profits, the trial court accepted and utilized the methodology testified to by Associated Uniform's expert. Associated Uniform's expert based his calculation on the actual costs that Associated Uniform did not incur due to RKR Motors' termination of the contracts. In support of its position, Associated Uniform relies on Knight Energy Services, Inc. v. C.R. International Enterprises, Inc., 616 So.2d 1079 (Fla. 4th DCA 1993). On the other hand, RKR Motors' expert concluded that all of Associated Uniform's fixed costs related to the contract must be considered and RKR Motors' relative portion must be included in the computation. In support of its position, RKR Motors relies on Boca Developers, Inc. v. Fine Decorators, Inc., 862 So.2d 803 (Fla. 4th DCA 2003). Interestingly, both cases were decided by the Fourth District Court of Appeal. As the trial court relied on Knight, we will address it first.
In Knight, which was decided in 1993, the plaintiff, C.R. International Enterprises, Inc., obtained an award of lost profits against the defendant, Knight Energy Services, Inc. ("Knight"), which had breached its contract. Knight appealed, arguing, in part, that the plaintiff failed to submit sufficient proof to establish its lost profits claim. In affirming the lost profits award, the Fourth District Court of Appeal noted that, "[t]he nonbreaching party seeking lost profits is entitled to the contract price less any deduction for costs and expenses necessary to fully perform," but also explained that the plaintiff "testified unequivocally that there were no deductible costs or expenses necessary to fully perform this contract." Knight, 616 So.2d at 1080 (emphasis added).
In Boca, which was decided in 2003, subsequent to Knight, a decorator contracted with a developer to furnish several new model apartments. After the developer breached the contract, the decorator sued and obtained a jury verdict awarding lost profits. The developer appealed, arguing that the trial court erred in allowing the decorator to calculate its lost profits without allocating the fixed overhead costs to the model apartment project. Although it admitted that its fixed costs related to the project were in dispute, the decorator argued that those fixed costs did not have to be included in the calculation of its lost profits because it did such a large volume of business and this particular project did not increase its fixed overhead costs. In rejecting this argument, the Fourth District Court of Appeal explained that, if the decorator worked on one hundred projects a year and its fixed costs did not increase after the first fifty, it does not follow that the plaintiff could recover greater lost profits from the seventy-fifth project than the twenty-fifth project. Instead, the court found that fixed expenses must be allocated across the board. The court distinguished Knight, noting that, in Knight, there was testimony that the fixed costs were not involved in performing the projects under contract, whereas in Boca, there was no evidence offered to suggest that the fixed costs were not involved in the performance of the contract in question. Thus, in Boca, the court reversed the award of lost profits, finding that the trial court erred by not taking into account the fixed costs. 862 So.2d at 805-06.
*593 In the instant case, Associated Uniform's argument, that an expense must be reduced or "saved" in order to be deducted from revenue in calculating lost profits, is essentially the same argument rejected in Boca, that fixed costs did not need to be deducted from a lost profits calculation because no additional costs were incurred by performing the project in question (and hence, no savings occurred when the project was not performed, as there would be no reduction of fixed costs). See Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc., 592 So.2d 1185, 1187 (Fla. 5th DCA 1992) (explaining that, in proving lost profits, the non-breaching party must calculate the total costs and expenses necessary to perform the contract, including supervisory services attributable to performing the contract and overhead expenses, and then deduct that sum from the balance owing on the contract price); Physicians Reference Lab., Inc. v. Daniel Seckinger, M.D. & Assocs., P.A., 501 So.2d 107, 109 (Fla. 3d DCA 1987) (providing that lost profits are determined by subtracting the costs of performance, including fixed and variable costs, from the contract price).
The holdings in Boca, Indian River, and Physicians Reference make perfect sense. Requiring a deduction of a share of fixed costs related to the performance of a contract allows for a true measurement of the amount the non-breaching party would have earned on the contract had there been no breach, which is the proper measure of damages. See Indian River, 592 So.2d at 1187; Physicians Reference, 501 So.2d at 108. Thus, for the reasons stated herein, we conclude that the methodology relied upon by Associated Uniform's expert was not only contrary to existing law, but would lead to absurd results, as is evidenced in the instant case. The parties do not dispute that Associated Uniform's average net profit has been 8% of its average total revenue, and a review of the record confirms this percentage.[3] The parties also do not dispute that Associated Uniform services approximately 1000 customers, and that RKR Motors is a "typical" customer. Thus, if Associated Uniform's profit margin is 8% overall, and RKR Motors is a typical customer, Associated Uniform would expect to realize an 8% profit in servicing RKR Motors' account.
An examination of the three contracts between Associated Uniform and RKR Motors reflects: (1) as to the May 21, 2003 contract, RKR Motors would have paid Associated Uniform an additional $87.75 per week for 246 additional weeks, had the contract not been breached, for a total of $21,586.50; (2) as to the July 18, 2000 contract, RKR Motors would have paid Associated Uniform approximately[4] $272 per week for 98 more weeks, for a total of $26,656; and (3) as to the July 18, 2000 contract, RKR Motors would have paid Associated Uniform $825.73 per week for 98 more weeks, for a total of $80,921.54. Thus, if all three contracts had been fully performed, RKR Motors would have paid Associated Uniform a total of $129,164.04, with approximately $108,000 being paid over a two year period and the remaining $21,000 being paid over an additional three year period.
*594 Applying Associated Uniform's 8% profit margin to the $129,164.04, had RKR Motors fully performed the contracts, Associated Uniform would have realized a net profit of $10,333.12. This figure is very close to the amount RKR Motors' expert testified was Associated Uniform's lost profits, after taking Associated Uniform's fixed expenses into account. In contrast, Associated Uniform's expert, who failed to take into consideration Associated Uniform's fixed expenses, calculated Associated Uniform's lost profits at $82,444. Thus, in applying the methodology relied upon by Associated Uniform's expert, Associated Uniform would realize a 64% net profit margin on services not rendered and an 8% profit margin for services it actually performs.
Because the amount that Associated Uniform was awarded as compensation for RKR Motors' breach of contract was eight times greater than the amount of profits that Associated Uniform reasonably would have expected to make from the contracts if they had not been breached, Associated Uniform was provided with a windfall. This is contrary to Florida law. See Indian River, 592 So.2d at 1187 (explaining that a non-breaching party is entitled to recover the amount of profits it would have earned during the remainder of the term of the contract had there been no breach); Pahokee Hous. Auth., Inc. v. S. Fla. Sanitation Co., 478 So.2d 1107, 1108 (Fla. 4th DCA 1985) (explaining that "a lost profit award must be commensurate with what is fair and just and limited to the actual damages sustained," and finding that a lost profits award, which does not take fixed overhead expenses into account, constituted an "unmerited windfall").
In the instant case, as in Boca, there was no testimony that the fixed costs were not related to the performance of the contracts at issue.[5] Therefore, in calculating the lost profits award, the trial court should have subtracted Associated Uniform's fixed expenses related to performing the contracts. See Boca, 862 So.2d at 805-06. As the trial court erred in not making this deduction, we reverse and remand for entry of a final judgment in favor of Associated Uniform in the amount of $10,437 and for reconsideration of Associated Uniform's entitlement to attorney's fees and costs.

CROSS-APPEAL
On cross-appeal, Associated Uniform asserts that the trial court erred by not awarding it damages pursuant to the liquidated damages provision of the contracts where it found that the liquidated damages amount was not disproportionate to Associated Uniform's actual lost profits.
A liquidated damages provision is a clause in a contract that determines in advance the measure of damages in the event of a contractual breach. See Black's Law Dictionary 949 (8th ed. 2004). Moreover,
[i]t is well settled that in Florida the parties to a contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach. . . . [T]his Court established the test as to when a liquidated damages provision will be upheld and not stricken as a penalty clause. *595 First, the damages consequent upon a breach must not be readily ascertainable. Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages.
Lefemine, 573 So.2d at 328; see also Crosby Forrest Prods., Inc. v. Byers, 623 So.2d 565, 567 (Fla. 5th DCA 1993); Humana Med. Plan, Inc. v. Jacobson, 614 So.2d 520, 522 (Fla. 3d DCA 1992). However, even if a liquidated damages provision is otherwise enforceable, equity will relieve against its enforcement when the liquidated damages amount is unconscionable in light of the circumstances existing at the time of the breach. Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972); Coleman v. B.R. Chamberlain & Sons, Inc., 766 So.2d 427, 429 (Fla. 5th DCA 2000); Perez v. Aerospace Acad., Inc., 546 So.2d 1139, 1141 (Fla. 3d DCA 1989).
The trial court found that Associated Uniform's damages were not ascertainable at the time the contracts were entered into, that the liquidated damages was $102,309, and that this amount was not disproportionate to the $82,444 it determined was Associated Uniform's lost profits. Despite the finding that the liquidated damages were not disproportionate to Associated Uniform's lost profits, the trial court declined to award the liquidated damages amount, and "in the best interest of equity," awarded $82,444 to Associated Uniform. This was error.
Unless the trial court found that the imposition of the liquidated damages amount would be "unconscionable," it was required, pursuant to prevailing law, to award the liquidated damages amount. See Hutchison, 259 So.2d at 132. Thus, the trial court erred in not awarding the liquidated damages amount where it concluded that the liquidated damages amount was not disproportionate to the actual lost profits. However, because the correct computation of the actual lost profits is $10,437, and $10,437 is clearly disproportionate to the liquidated damages of $102,309, such that it would be unconscionable to impose the liquidated damages in this case, the trial court must award lost profits.

CONCLUSION
The final judgment issued by the trial court is reversed and we remand for entry of final judgment in favor of Associated Uniform in the amount of $10,437. This Court hereby vacates its November 16, 2006 order granting Associated Uniform attorney's fees and denying RKR Motors' request for attorney's fees. Associated Uniform's motion for attorney's fees is hereby denied. RKR Motors' motion for attorney's fees is granted and remanded to the trial court to fix the amount.
Reversed and remanded with instructions.
NOTES
[1] Based on the formula contained in the contract, the parties agreed that the liquidated damages amount was approximately $102,000.
[2] In paragraph 2 of the final judgment, the trial court stated:

Plaintiff is in the business of renting uniforms and providing service on those uniforms, regardless of obtaining the Defendant's account. As such, the costs that were expended for overhead would have been expended regardless, as Plaintiff was not seeking to expand their operations, nor was the payment to provide for the expansion of operations by hiring more employees and expanding production facilities. Further, Plaintiff did not expect to put an undue burden on their operations since their overhead, salaries, rent and a number of other costs was something that Plaintiff knew it already had. Since the overhead is already on-going and the salaries are already being paid, the only extra overhead to incur in order to service the Defendant's account is contained within the valuation provided by Plaintiff's expert, which is the amount Plaintiff needs to expend over and above what Plaintiff was already expending in order to service Defendant's account.
[3] A review of the income statements in the record shows that Associated Uniform's average annual total revenue is $3,916,690, while its average annual net operating profit is only $313,937, which is approximately 8% of Associated Uniform's annual revenue.
[4] This contract sets forth monthly charges for three of the five charges that it lists, so a weekly charge was calculated by dividing these amounts by four.
[5] Associated Uniform relies on testimony providing that no fixed cost, other than the cost of fuel, was "saved" by it not performing the breached contracts. However, as noted above, the correct method in determining lost profits is not to subtract only those expenses that would not be "saved" or reduced by not performing the breached contract. Instead the correct method in determining lost profits is to subtract all costs related to performing the contract.