EMAS, J.
 

 Alba Fito (“Fito”), Horizon General Investments, LLC (“Horizon”), Caguy Investment Group, LLC, and 51 W. Shore, LLC (collectively “appellants”) appeal a final order denying appellants’ motion to alter a final judgment in favor of Attorneys’ Title Insurance Fund, Inc. (“Attorney’s Title”). Because Attorneys’ Title failed to establish its claim for unjust enrichment, we reverse with directions to enter judgment for appellants.
 

 FACTS AND BACKGROUND
 

 Viewing the evidence in a light most favorable to the final judgment, the evidence presented at the non-jury trial established the following:
 

 Attorneys’ Title is a licensed title insurer in Florida. National Title Services, Inc. (“National Title”) conducts real estate closings.
 
 [1]
 
 National Title acted as an agent of Attorneys’ Title for the purpose of issuing title insurance commitments, policies and endorsements that were underwritten by Attorneys’ Title in connection with the closings.
 

 Fito is neither a real estate broker nor a lender, yet she utilized National Title to orchestrate several real estate transactions, including two properties located in Coral Gables and one in the Brickell area. Fito received significant proceeds from
 
 *757
 
 these three transactions, and the proceeds from these transactions were wired directly from National Title to Horizon, an entity owned by Fito. Attorneys’ Title issued a title insurance policy, a commitment letter and a closing protection letter
 
 [2]
 
 for each of the transactions.
 

 The closing files for each of the transactions contained numerous similarities, including multiple final HUD-1 Settlement Statements for the same property. The seller would receive one HUD-1 containing a particular amount for the sale of his property; the lender would receive a different HUD-1 containing a fraudulently inflated amount for the sale of the same property. In reliance on the inflated sales amount, the lender would wire those monies to an escrow account held by National Title. National Title would then distribute those funds to complete the closing. The net difference between the inflated price (i.e., the higher amount provided by the lenders) and the true purchase price (i.e., the lesser amount disbursed to the seller) would be wired from National Title to appellants’ bank accounts. Appellants received approximately $2.35 million as a result of these transactions.
 

 Upon learning of the fraudulent nature of these transactions, the lenders presented claims to Attorneys’ Title. At least three of the four claims pertaining to the transactions were brought under the closing protection letters.
 
 [3]
 
 Attorneys’ Title subsequently brought suit against appellants, asserting — among other things— that appellants were unjustly enriched at the expense of Attorneys’ Title, innocent homeowners and lenders. At the non-jury trial, Attorneys’ Title established the amount of monies received by appellants. However, Attorneys’ Title introduced no evidence that Attorneys’ Title had paid any claim to any lender, agreed to pay any claim to any lender, or received an assignment of rights or claims from any lender.
 

 At the conclusion of the non-jury trial, the trial court determined that appellants participated in fraudulent real estate transactions and received $2,349,787.27 of escrowed lenders’ funds as a result. The court found that appellants knew the closings were improper, yet actively participated in them. The court further found that the fraudulently inflated sales prices induced the various lenders to fund loans in excess of the values of the property, and that appellants profited unjustly from this fraud. Finally, the court found that the escrowed funds were transferred directly from the escrow account of National Title to appellants’ bank account, and that Attorneys’ Title received a number of claims related to National Title, including claims related to these four transactions.
 

 DISCUSSION AND ANALYSIS
 

 The findings of fact come to us clothed with a presumption of correctness, and these findings will not be disturbed unless appellants can demonstrate that they are clearly erroneous.
 
 Tropical Jewelers Inc. v. Bank of America, N.A.,
 
 19 So.3d 424 (Fla. 3d DCA 2009). A factual finding made by a trial court in a non-jury trial is clearly erroneous only when there is no substantial evidence to sustain it, it is clearly against the weight of the evidence or it was induced by an erroneous view of the law.
 
 In re Donner’s Estate,
 
 364 So.2d
 
 *758
 
 742 (Fla. 3d DCA 1978). We apply a
 
 de novo
 
 standard to the trial court’s conclusions of law and application of law to the facts.
 
 RKR Motors, Inc. v. Associated Uniform Rental & Linen Supply, Inc.,
 
 995 So.2d 588 (Fla. 3d DCA 2008).
 

 The elements of a cause of action for unjust enrichment are: (1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.
 
 N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.,
 
 764 So.2d 672 (Fla. 3d DCA 2000).
 

 There is little question that the evidence supported the trial court’s findings that Attorneys’ Title established the second and third elements. The only question is whether Attorney’s Title established the first element: that it was the party who conferred the benefit upon appellants. The evidence at trial established that the funds at issue were provided not by Attorneys’ Title, but by the lenders. At the time of trial, Attorneys’ Title had not expended any funds to appellants. There was no evidence presented to establish that:
 

 — The funds wired to the lenders belonged to Attorneys’ Title;
 

 — Attorneys’ Title paid any claims to any lender for these four transactions;
 

 — Attorneys’ Title processed any claims by any lender for these four transactions;
 

 — Any lender assigned any rights or claims to Attorneys’ Title;
 

 — Attorneys’ Title was subrogated to the lenders’ right to seek the return of the monies provided by the lenders to appellants.
 

 In short, although there was substantial competent evidence to establish that appellants received a benefit conferred, there was no evidence to establish that Attorneys’ Title was the party that conferred such a benefit. “At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution
 
 to the other.” Gonzalez v. Eagle Ins. Co., 948
 
 So.2d 1 (Fla. 3d DCA 2006) (emphasis added). The “other,” in the case before us, is not Attorneys’ Title, but the lender in each of the four transactions.
 

 Attorneys’ Title asserts that it was National Title who disbursed the escrowed funds, and that National Title did so as an agent of Attorneys’ Title. While this may be true, it is unavailing. The disbursed funds did not belong to National Title or Attorneys’ Title. Instead, the funds belonged to the lenders, none of whom was involved as plaintiffs in the lawsuit. Absent some evidence that Attorneys’ Title received an assignment of rights from, or stood in the shoes of, the lenders, Attorneys’ Title did not and could not establish that it was the party that conferred the benefit upon appellants.
 

 We recognize that this may appear to be a harsh result, given the substantial competent evidence that appellants engaged in a series of fraudulent transactions and pocketed significant sums of money to which they are not entitled. However, it was not enough for Attorneys’ Title to prove that appellants were unjustly enriched. Attorneys’ Title had to prove that appellants were unjustly enriched by a benefit conferred upon them by Attorneys’ Title. This it failed to do.
 

 Although the theory of unjust enrichment is equitable in nature,
 
 Bowleg v. Bowe,
 
 502 So.2d 71 (Fla. 3d DCA 1987), a
 
 *759
 
 trial court cannot do equity unless the plaintiff first establishes his claim. “An equity court will never be thwarted from fashioning a decree that will do right and justice
 
 between the parties.” Demorizi v. Demorizi,
 
 851 So.2d 243, 246 (Fla. 3d DCA 2003) (emphasis added). Were we to affirm the judgment, we would merely be shifting the funds from one party clearly undeserving of this windfall (appellants) to another party that, based upon the evidence presented, is also undeserving of this windfall (Attorneys’ Title).
 

 We therefore reverse and remand, with directions to enter judgment for the appellants.
 

 [1]
 

 . National Title was an original party to the lawsuit but has since settled with Attorneys’ Title.
 

 [2]
 

 . The closing protection letter is an agreement between the title insurance underwriter (Attorneys' Title) and the lender, which is relied upon by the lender as to fraud or dishonesty on the part of the title insurance underwriter's agent (National Title).
 

 [3]
 

 . The claim for the fourth transaction was triggered under the mortgagee title insurance policy, which could also render Attorneys’ Title liable to the owner and the lender.