873 So.2d 392 (2004)
LEVITT-ANSCA TOWNE PARK PARTNERSHIP, Bellagio by Levitt Homes, Inc., Bellagio by Ansca, Inc., a/k/a Bellaggio by Ansca Homes Inc., and Liberty Mutual Insurance Company, Appellants,
v.
SMITH & COMPANY, INC. and American Home Assurance Company, Appellees.
No. 4D02-2572.
District Court of Appeal of Florida, Fourth District.
April 14, 2004.
Rehearing Denied June 8, 2004.
*394 William R. Scherer and James F. Carroll of Conrad & Scherer, LLP, Fort Lauderdale, for appellants.
Mary Piccard Vance of Vezina, Lawrence & Piscitelli, Tallahassee, and Joseph W. Lawrence, II, Michael A. Piscitelli of Vezina, Lawrence & Piscitelli, P.A., Fort Lauderdale, for appellee, Smith & Company, Inc., Robert E. Morris and David Scott Knight of Robert E. Morris, P.A., Tampa, for appellee American Home Assurance Company.
MAY, J.
A contract between a developer and a contractor hired to perform earthwork ran amuck, resulting in litigation. The contractor filed a complaint against the developer and Liberty Mutual Insurance Company. The developer counter-claimed. The jury returned a verdict in favor of the contractor and awarded damages. It is from the Amended Final Judgment entered following post-trial motions that the developer and Liberty Mutual appeal. The developer argues that the trial court erred in denying its motion for new trial. We agree and reverse.
The developer solicited a price from the contractor for earthwork to be performed at the construction site of Bellagio. The contractor initially submitted a proposal of $4,000,000, which contained a 50% credit to the developer for each cubic yard of surplus fill that the contractor removed from the site. The developer rejected the proposal and requested a flat price to perform the work. The contractor submitted a new price of $2,000,000, anticipating that it would also receive 1.6 million cubic yards of surplus fill.
The contract, however, was silent on the quantity of surplus fill. An exhibit attached to the contract included a paragraph which provided that "[a]ll surplus fill that is not needed for the Project is the property of the Contractor." The contractor intended to use the surplus fill in the reconstruction of U.S. 441 under a contract with the Department of Transportation and other projects. It anticipated selling any remaining surplus fill.
The contractor immediately began hauling fill from the site for use on the U.S. 441 project. According to the developer, the contractor was taking too much fill from the site and not finishing the work on time. According to the contractor, the developer was asking it to perform work not included in the contract price and would not approve change orders submitted by the contractor.
By the time the developer terminated the contractor, a little over 50% of the earthwork had been performed. At that time, the contractor had already removed 571,781 cubic yards of fill from the site with an estimated worth in excess of $1.5 million. The developer paid the contractor *395 $342,859, but invoices totaling $714,903.26 remained outstanding.
Of the many disagreements that arose between the developer and the contractor, the most significant dispute concerned the contractor's removal of large quantities of fill early in the project. This evolved into another dispute over who was responsible for obtaining special permitting required when more than 10% of the land was excavated. In legal terms, the disputes boiled down to who breached the contract.
The contractor sued the developer and requested the following damages.

Unpaid Invoices $ 714,903.36
Work Performed
(w/o payment) $ 352,263.72
Added Bond Premium $ 11,424.00
Idle Equipment $ 654,292.50
Un-funded Equipment
Mobilization $ 37,698.84
Anticipated Profit $3,266,077.70
 _____________
TOTAL $5,036,660.04

The developer claimed that the contractor breached the agreement, no amount of surplus fill had been guaranteed, and the contractor was required to deduct its costs from any anticipated lost profits. The jury found the developer in breach of the contract and awarded the contractor $2,959,638.54 in damages for the breach. This included a $714,903.36 lien for work performed, and $352,263.72 for work performed outside the parameters of the agreement based upon the theory of quantum meruit.
On appeal, the developer argues the damages exceed those permitted by law and are not supported by the evidence. The argument has many sub-parts, including the value of the surplus fill, the contractor's failure to account for its costs in determining lost profits, and the duplicitous nature of the damage awards. The developer seeks a reversal of the final judgment with directions to the trial court to enter a judgment in its favor. In the alternative, it seeks a new trial on all issues claiming the damages and breach issues are so intertwined they cannot be considered separately.
Although the contractor maintains that the evidence supports the damages awarded, at oral argument, it candidly admitted an inability to account for the jury's calculation of the precise amount awarded for the breach. We too are unable to justify the damages awarded in this case.
The proper measure of damages for breach of a partially performed construction contract [is] "either quantum meruit or the contractor's lost profit together with the reasonable cost of labor and materials incurred in good faith in the course of partial performance of the contract."

Teca, Inc. v. WM-TAB, Inc., 726 So.2d 828, 830 (Fla. 4th DCA 1999) (quoting Nico Indus., Inc. v. Steel Form Contractors, Inc., 625 So.2d 1252, 1252 (Fla. 4th DCA 1993). See also Frenz Enters., Inc. v. Port Everglades, 746 So.2d 498 (Fla. 4th DCA 1999) (discussing burden of proof for lost profits). See also Sampley Enters., Inc. v. Laurilla, 404 So.2d 841 (Fla. 5th DCA 1981)) (reversing damage award because court awarded out of pocket expenses when lost profits was the proper measure of damages).
In this case, however, the contractor sought both damages on the contract and an additional sum for work performed outside the contract under the theory of quantum meruit. We hold that because the contract provided the method for obtaining payment for additional work, the contractor could not seek equitable relief for additional work at the same time it sought legal relief in the form of lost profits for the breach. Sundie v. Lindsay, 166 So.2d 152 (Fla. 3d DCA 1964) ("It is incorrect for evidence to be introduced as to *396 both methods, the injured party must make an election in regard to which method he seeks to recover, and pursue that method only."); Ballard v. Krause, 248 So.2d 233, 235 (Fla. 4th DCA 1971) (Quantum meruit "is not available to a contractor if the contractor is suing on the contract."). See also Corn v. Greco, 694 So.2d 833 (Fla. 2d DCA 1997). Therefore, on remand the contractor must elect between legal damages on the contract and equitable relief under quantum meruit.
We now turn our attention to the jury's determination of lost profit damages under the contract. Lost profits must be proven "with a reasonable degree of certainty" before they are recoverable. Shadow Lakes, Inc. v. Cudlipp Constr. and Dev. Co., 658 So.2d 116, 117 (Fla. 2d DCA 1995). "The mind of a prudent impartial person should be satisfied that the damages are not the result of speculation or conjecture." Id. See also Brevard County Fair Ass'n, v. Cocoa Expo, Inc., 832 So.2d 147 (Fla. 5th DCA 2002).
"The general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. But the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed." Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 415 So.2d 865, 867 (Fla. 1st DCA 1982). See also Fu Sheng Indus. Co., v. T/F Sys., Inc., 690 So.2d 617, 622 (Fla. 4th DCA 1997).
The damage award in this case ran afoul of these well-recognized rules of law. The $2 million dollar contract price consisted of $1,700,000 in cost of performance, a profit of $300,000, and a speculative amount of surplus fill. By the time the developer terminated the contract, it had paid the contractor $342,859 for submitted invoices and the contractor had received over $1.5 million in fill. The jury then awarded the contractor $714,903.35 for the unpaid invoices, another $352,203.72 under the theory of quantum meruit, and $2,959,633.54 in damages. This resulted in a windfall of over $3 million when the contractor had performed slightly more than half of the earthwork.
The contract provided neither a guarantee of the amount of surplus fill that the contractor might expect nor did the developer agree to a specified sum. Indeed, the contract defined surplus fill as that which was "not needed for the Project." The contractor never completed the project. Thus, its proof came in the form of an estimation, not reality. Barile Excavating & Pipeline Co., v. Kendall Props., Inc., 462 So.2d 1129 (Fla. 4th DCA 1984). This element of damages was too speculative to have been submitted for jury consideration.[1]See Shidiam Corp. v. M & D Research Corp., 374 So.2d 553 (Fla. 4th DCA 1979); Shadow Lakes, Inc. v. Cudlipp Constr., Inc., 658 So.2d 116 (Fla. 2d DCA 1995).
In addition, the contractor relied on percentages of work performed to determine costs and profits. This it cannot do. Nico Indus., Inc. v. Steel Form Contractors, Inc., 625 So.2d 1252 (Fla. 4th DCA 1993). There must be actual proof of costs incurred and profits lost.
Lastly, the contractor sought additional damages for "costs" it incurred as a result of the developer's breach, which took the form of idle equipment, an added bond premium, and unfunded equipment mobilization (plus a 15% markup). If these costs were to be recouped, then they were also "costs" that needed to be deducted from the contractor's claim for lost *397 profits. Ballard v. Krause, 248 So.2d 233 (Fla. 4th DCA 1971). Instead, the costs were added as an element of recoverable damages. This constituted error. Id.
These factors considered as a whole lead to but one conclusionthe judgment must be reversed. "A district court of appeal cannot affirm a verdict which rests `on a mere probability or guess,' or a verdict which `has no rational predicate in the evidence.'" Rakita v. Rose, 547 So.2d 154, 157 (Fla. 3d DCA 1989). In spite of the trial court's diligent effort to ensure the fairness of the trial, it permitted the jury to consider damages too speculative in nature, causing the jury to render a verdict that cannot be explained by the evidence nor countenanced in the law. And when no reasonable explanation can account for the verdict, we have no choice but to reverse. Brown v. Estate of Stuckey,' 749 So.2d 490 (Fla. 2000). The trial court properly allowed the jury to determine the issue of breach. The remand is therefore limited to a new trial on damages. Ruskin v. Ryan, 859 So.2d 1218 (Fla. 4th DCA 2003).
On remand, the court should limit the damages to either lost profits under the contract or equitable relief under the theory of quantum meruit. In addition, the trial court should ensure that all costs are deducted, not added. Fu Sheng Indus. Co., v. T/F Sys., Inc., 690 So.2d 617 (Fla. 4th DCA 1971). This includes applicable overhead, idle equipment, the added bond premium, and unfunded equipment mobilization. Boca Developers, Inc. v. Fine Decorators, Inc., 862 So.2d 803 (Fla. 4th DCA 2003).
REVERSED AND REMANDED.
STONE and STEVENSON, JJ., concur.
NOTES
[1] The developer continuously objected to the speculative nature of this aspect of the contractor's claim for lost profits throughout the proceedings.