HAZOURI, J.
Appellants, Devon Medical, Inc. (“Devon”), Devon Health Services, Inc. (“DHS”), and Supply Marketing, Inc. (“SMI”) (collectively “Devon Companies”), appeal the jury’s award of $1,413,394.00 to Appellee, Ryvmed Medical, Inc. (“Ryvmed”), and the denial of their motion for directed verdict. Devon Companies raise four issues on appeal: (1) that Ryvmed’s promissory estoppel claim was barred by the statute of frauds; (2) that Ryvmed failed to prove the existence of an *1127 enforceable written contract; (3) that Ryvmed’s tortious interference claim should fail as a matter of law; and (4) that Ryvmed failed to establish lost profit damages. We find that the first three contentions lack merit and affirm the trial court’s denial of Devon Companies’ motion for directed verdict as related to these claims without discussion. However, we find that Ryvmed failed to establish lost profit damages and accordingly, we reverse and direct the trial court to enter judgment for Devon Companies on the claim for lost profits. We affirm Ryvmed’s recovery of tortious interference damages.
Ryvmed is in the business of marketing, selling, and distributing medical devices. Devon Companies are also in the business of manufacturing, marketing, selling, and distributing medical products and devices. In July 2005, representatives of Ryvmed and Devon Companies began a series of oral conversations and emails culminating in an agreement: Ryvmed would purchase containers of medical syringes from Devon Companies in exchange for Devon Companies providing Ryvmed with products, marketing support, and access to their substantial network of physicians. The terms of the agreement were memorialized in an email dated August 18, 2005, and titled “Devon Agreement.”
Relying on this agreement, Ryvmed committed time and resources to developing the product and claimed it lost momentum with the Ryvmed brand and many of its customers. In late 2005, however, Devon informed Ryvmed that it would no longer provide telemarketing services. Consequently, a market for Devon syringes never developed and Ryvmed asserted that it lost profits it would have realized, had Devon Companies performed their obligations under the agreement. Ryvmed then filed suit, and its fourth- amended complaint alleged seven counts: (1) breach of written contract; (2) breach of oral contract; (8) fraudulent misrepresentation; (4) negligent misrepresentation; (5) . fraud in the inducement; (6) tortious interference with a business relationship; and (7) promissory estoppel. The tortious interference count was based on a business relationship Ryvmed had with Indigo Orb, Inc., to which Ryvmed supplied syringes prior to the agreement with Devon.
The parties proceeded to trial and two experts testified regarding Ryvmed’s lost profits. First, Michael L. Sperdutti, an expert in telemarketing, testified that Ryvmed could have expected a ten percent closing ratio, a figure representing the number of people telemarketers convert into buying customers. In formulating his lost profit calculation, Sperdutti testified that he compared Ryvmed’s business with another business called Medi Supply:
I actually had an account that was very similar, even in terms of size of Ryvmed; and went to that and went to the books of that particular client and discussed with them, you know, what they were doing, what their pricing was and matched everything up. And then I also took a look at the internet; and then, you know, started looking at the product categories and the pricing and making sure that I was up to date on at least ... the current pricing and prices.
By “[tjaking a look at the Ryvmed books, as well as taking a look at my client who had a very similar business,” Sperdutti opined that Ryvmed’s gross profits would have been between thirty-five and forty percent.
Next, Richard Dotson, a Certified Public Accountant, testified regarding his year-by-year • calculation of the damages Ryvmed suffered from the breach of contract. In order to estimate Ryvmed’s damages, Dotson designed a financial model after reviewing Ryvmed’s financial information and using multiple databases such *1128 as Integra and IBIS World. Dotson explained that
Integra is a publicly accessible database that — what they do is they compile financial statistics from a number of companies. They’ll get the financial statements and determine what are the average cost of sales, or cost of sales margin and gross profit margin. They’ll determine what is the average rent paid. They may determine what is the average overhead. And it will be stratified by business size, such as sales from a million to two-and-a-half million, two-and-a-half to five million, five million to ten million. So we can kind of narrow down to where we would be looking as far as a comparable company. It’s generally ... for benchmarking and comparing your existing company to what’s the average nationally.
Further, in determining Ryvmed’s profit margin, Dotson relied on Sperdutti’s estimate and examined “the Integra database for companies in that size market,” which documented profit margins of between twenty-seven to twenty-eight percent. Dotson estimated the present value of Ryvmed’s damages to be $10,244,000.00 over a five-year period. Dotson had no experience in telemarketing or in the sales of syringes.
At the close of trial, Devon Companies moved for a directed verdict. The trial court granted the motion for directed verdict on Ryvmed’s breach of oral contract claim, determining that it was barred by the statute of frauds. The trial court, however, denied that the promissory es-toppel claim was similarly barred. Thus, claims for breach of written contract, promissory estoppel, and tortious interference were submitted to the jury.
Ultimately, the jury determined that Devon breached the written contract with Ryvmed; the jury found that neither DHS nor SMI had entered into a written agreement with Ryvmed and, thus, there was no breach. However, the jury found all three of the companies liable on the promissory estoppel claim and awarded Ryvmed $1,400,000.00 in damages. The jury found Devon solely liable on the tortious interference claim and awarded Ryvmed $13,394.00 in damages. Notably, the verdict form had only a single line for damages on both the promissory estoppel claim and the breach of contract claim.
“The standard of review on appeal of the trial court’s ruling on a motion for directed verdict is de novo.” Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 20 (Fla. 4th DCA 2006) (citing Flagstar Cos. v. Cole-Ehlinger, 909 So.2d 320 (Fla. 4th DCA 2005)). “Upon a directed verdict motion, the weight of the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party.” Pascale v. Fed. Exp. Corp., 656 So.2d 1351, 1353 (Fla. 4th DCA 1995) (citing Kowkabany v. Home Depot, Inc., 606 So.2d 716 (Fla. 1st DCA 1992)).
A trial court’s award of damages is reviewed to determine if it is supported by competent, substantial evidence. Emerald Pointe Prop. Owners’ Ass’n v. Comm. Constr. Indus., Inc., 978 So.2d 873, 879 (Fla. 4th DCA 2008) (citations omitted). “The general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. But the rule is not an inflexible one, and if profits can be established with reasonable certainty, they are allowed.” Levith-ANSCA Towne Park P’ship v. Smith & Co., Inc., 873 So.2d 392, 396 (Fla. 4th DCA 2004) (citations omitted). Lost profits are typically proven by one of two methods: (1) the before and after theory; or (2) the yardstick test. River Bridge Corp. v. Am. Somax Ventures ex rel. Am. Home Dev. Corp., 18 So.3d 648, 650 (Fla. 4th DCA 2009) (citations omitted).
*1129 In the instant case, Ryvmed established its lost profits with the yardstick test. “The yardstick test is generally used when a business has not been established long enough to compile an earnings record that would sufficiently demonstrate lost profits and compares the profits of businesses that are closely comparable to the plaintiffs.” Id. (citation omitted) (internal quotation marks omitted). “ ‘[L]ost profits must be established with a reasonable degree of certainty and must be a natural consequence of the wrong,’ and ‘[s]uch an award cannot be based upon speculation or conjecture.’ ” Id. at 650-51 (quoting Sostchin v. Doll Enters., Inc., 847 So.2d 1128, 1128 (Fla. 3d DCA 2003)).
In River Bridge, this court examined the yardstick measure of damages. In that case, a builder brought an action against a developer for breach of a right of first refusal contained in a development contract. Id. at 649. When calculating lost profits, the builder’s expert used the actual sales made by builders of the subsequent stage of the project to determine its lost profits. Id. at 650. The expert took the number of actual closings and multiplied it by his estimated profit rate. Id. However, the expert testified that he was unaware as to whether the other builders ever realized a profit in the homes sold and did not know the extent of their costs. Id. In finding that the claim for lost profits was too speculative, this court observed:
[Builder] suggests an adequate yardstick was provided by the contractors that built out the subsequent parcels. While those contractors might have provided the trappings of a yardstick, it was not enough to simply assume those contractors were comparable and made a profit; it was necessary to prove both. To do so, it was essential that the actual profit realized be proven or that the profit be determined by subtracting their expenses from their gross sales. It was also essential to establish that those contractors were “closely comparable’’ to [Builder], -The expert in this case did neither.
Id. at 651 (emphasis added).
Likewise, in the instant case, neither of Ryvmed’s expérts provided evidence of profits made by a comparable company. While Michael Sperdutti testified that he compared Ryvmed’s business with another business called Medi Supply, he failed to establish that Medi Supply was closely comparable to Ryvmed. Sperdutti only made a blanket statement regarding similarity and did not prove how Medi Supply resembled Ryvmed in size, location, profits, and position.
Further, Ryvmed’s second expert witness, Richard Dotson, did not testify as to the profits, costs, or expenses of a similar company. Rather, Dotson testified that in designing his financial model he
reviewed a number of the financial information for Ryvmed; the Quick Books, the purchase orders. We reviewed Devon’s website. We tried to review anything pertaining to Ryvmed on the Internet. We utilized publicly accessible databases, such as Integra information, IBIS World, and pretty much basic modeling and financial modeling formulas as well.
Notably, Dotson did not establish that Medi Supply or any other company in the databases were in the same “start-up” position as Ryvmed, did not introduce any evidence of costs and expenses of a similar company, and did not testify that a similar company made a profit, Thus, the testimony of both of Ryvmed’s experts lacked “the reasonable certainty necessary to support the yardstick approach to lost profits, rendering the testimony too speculative to sustain the damages.” Id. at 651.
While Ryvmed’s lost profit damages were too speculative, we affirm the $13,394.00 in damages for Ryvmed’s tor- *1130 tious interference claim. There was competent, substantial evidence to support the claim for tortious interference. The testimony presented by deposition of the president of Indigo Orb clearly established the existence of a business relationship with Ryvmed. The business relationship existed several months prior to any discussion between Devon and Ryvmed. The arrangement between Ryvmed and Indigo Orb was that Ryvmed would place orders for Indigo Orb through Devon, but Indigo Orb would pay Ryvmed, not Devon. Devon interfered with Ryvmed’s relationship with Indigo Orb when it unilaterally altered the arrangement and instructed Indigo Orb to pay Devon instead of Ryvmed. Ryvmed never received any money from the sales to Indigo Orb.
Accordingly, we affirm Ryvmed’s damages for the tortious interference claim and reverse Ryvmed’s lost profit damages for the promissory estoppel and breach of contract claims. We remand to the trial court with directions to enter a judgment in favor of Devon Companies on the lost profit damages.

Affirmed in Part; Reversed in Part, and Remanded.

CIKLIN, J., concurs.
GROSS, C.J., concurs specially with opinion.